AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover the value of a registered quarter horse stallion killed May 18, 1960, when struck by a truck of the defendant, Ed Strong, driven by his minor daughter Clotine Strong. Also made defendant was Strong in his representative capacity as administrator of the estate of his minor daughter, as was his public liability insurer. From a judgment in plaintiff’s favor for $3000 the defendants appealed.
Plaintiff answered the appeal and prayed that the award be increased to $5000.
On this appeal, defendants particularly complain of the action of the trial court in finding that Miss Strong was negligent, and that plaintiff was free from contributory negligence. The award was also attacked as grossly excessive.
The issues thus presented are largely, if not entirely, factual.
The facts as to the occurrence of the accident may be first briefly stated. Miss Strong, driving her father’s Chevrolet pickup truck, struck the horse on the head, resulting in its almost instant death. The collision occurred as the horse came into the truck’s lane of travel. At the scene of the accident, the highway, asphalt surfaced, and of the usual and customary width is practically straight and level. There were no obstructions to the motorist’s view, such as vegetation on the side of the right of way which was only approximately knee-high. Miss Strong had driven a distance of approximately two and one-half miles from her father’s residence at a speed estimated by her from 45 to 55 miles per hour before encountering the horse on the highway about a half mile from plaintiff’s corral. The exact time of the collision was not definitely established, however, Miss Strong left her father’s home not later than 7:10 P.M. Considering her rate of travel, the evidence is convincing that the accident must have occurred between 7:15 and 7:30 P.M. Even so, she had the truck headlights on and in operation from the time she left home.
Negligence, charged to Miss Strong constituting a proximate cause of the accident, included a charge that she failed to maintain a proper lookout, or to timely observe the horse on the highway. Therefore, material to this charge is the question of visibility. No atmospheric conditions existed to obscure one’s visibility, and darkness had not so set in as to materially affect one’s vision. Nevertheless, as stated, the truck’s headlights were in operation. Miss Strong’s testimony is that she did not see the horse until it loomed up in front of her at a distance of 50 to 75 feet away, in the middle of the highway, crossing from east to west, and, therefore, approaching her lane of travel. On thus observing the horse, she veered her truck to the right, nevertheless, in so doing, she did not avoid the accident.
Under the aforesaid statements of facts, the trial court evidently concluded, as we do, that the horse should have been visible to the driver a sufficient distance ahead to have enabled her to take evasive action to prevent the accident had she been maintaining a proper lookout or making proper observation.
Appropriate is an observation made by this court in Alfred v. Lee, 71 So.2d 601, 604, wherein, with reference to a similar set of facts, it was stated:
“ * * * His rate of speed, so he says, was such that when he saw the mule on the highway at fifty to sixty feet away he barely had time to hit his brakes when the collision occurred. He does not claim to have seen the mule coming on the highway, and, according to the testimony, there does not appear to have been any obstructions to view, as he claimed he could see one hundred fifty to two hundred feet by his lights. If the mule was already on the highway, when its distance away was within the range of his lights, then he should have seen *72 it, and if it was not already on the highway, he should have seen it coming in that direction. Obviously, he was not keeping a proper lookout.”
The conclusion is, therefore, inescapable that Miss Strong was guilty of negligence constituting a proximate cause of the accident.
The charge of contributory negligence directed to plaintiff is that he failed to confine the horse under adequate fence and, therefore, permitted it to escape and to roam at large, particularly on a public highway, in violation of a local stock law.
The record, in our opinion, fails to support this charge. The outside enclosure was of a five-strand barbed wire fence of a height of five and one-half feet; the inside enclosure was of a four-strand barbed wire fence, five feet in height. The enclosure was of the usual and customary design and height used in that area. Circumstantial evidence indicated that the horse jumped the five-strand fence, breaking the top strand as it emerged from its confinement. Prior to this occasion, the horse had shown no fence-breaking propensities. To the contrary, it was shown to be of a gentle, even tempered disposition to such a degree as to have been ridden in safety by plaintiff’s wife and minor children.
After consideration of the evidence, we find, as did the trial court, that the fence was substantial, and for the reasons stated, plaintiff could not have foreseen that the horse would have jumped the fence and escaped from its enclosure. The horse was, therefore, upon the highway without any fault on the part of plaintiff. Sims et al. v. Ainsworth, La.App., 120 So.2d 371.
Lastly for consideration, is the value of the horse as a basis of an award for damages. The horse, registered under the name of “Desert Rat”, was of a line of famous quarter horses descending from King P-234, regarded as the foundation stallion of the quarter horse line. Plaintiff’s experts, Butler and Bowen, testified that the horse had a value of $3000 to $4000. This estimation is based, in part, upon the proven and established qualities of the horse as a thoroughbred. This evidence, in our opinion, amply supports the award as made by the trial court.
The judgment appealed is, therefore, accordingly, affirmed at defendants-appellants’ cost, including the cost of this appeal.
Affirmed.