265 So.2d 270 (1972)
Harry H. LEATHEM, Jr., Individually, and as Natural Tutor of Patricia Ann Leathem and Faye Marie Leathem
v.
W. H. MOORE et al.
Mrs. Joy KEVLIN, Individually, and as Tutrix of the Minor, Linda Joy Kevlin
v.
W. H. MOORE et al.
Nos. 8920, 8921.
Court of Appeal of Louisiana, First Circuit.
June 26, 1972.
*271 H. Alva Brumfield, Baton Rouge, for appellant.
Carlos G. Spaht (Kantrow, Spaht, Weaver & Walter), and Emile C. Rolfs, III (Durrett, Hardin, Hunter, Dameron & Fritchie), Baton Rouge, for appellee.
Before LANDRY, BLANCHE and TUCKER, JJ.
LANDRY, Judge.
Plaintiffs appeal judgments dismissing their consolidated tort actions against defendant, Fruehauf Trailer Company (Fruehauf), for damages for loss, personal injuries and related expenses sustained and incurred while riding as guest passengers in a station wagon being driven by Henry A. Kevlin, Jr. The Kevlin vehicle was struck by a tractor-trailer unit which crossed the median of a four-lane highway when its owner-driver, W. H. Moore, applied his brakes to stop and the unit skidded or jackknifed out of control on a wet, slick highway. Mr. Kevlin and his guest passenger, Mrs. Harry H. Leathem, were killed in the accident, and the other occupants, Mrs. Kevlin and her minor child, Linda, and Mr. Leathem and his minor children, Patricia Ann and Faye Marie, were injured. Recovery is sought by Mrs. Kevlin, individually, and on behalf of her minor child, and by Mr. Leathem, individually, and on behalf of his minor children. Named defendants are Moore, his insurer, Carolina Casualty Company (Carolina), Riverside Oil Mill (Riverside), Moore's employer and Fruehauf, manufacturer of the trailer involved in the accident. Carolina paid its policy limits. Riverside compromised with plaintiffs. Judgment was rendered against Moore, who has since *272 died, commensurate with his ability to pay. Fruehauf, manufacturer of Moore's trailer, is charged with accountability on the product's liability concept. In essence, appellants maintain Fruehauf was negligent in designing and marketing the trailer without dust shields on its brakes, and also negligent in not installing dust shields thereon when it repaired the trailer's brakes a relatively short time before the accident. The trial court found Fruehauf free of negligence in both respects. We affirm.
The accident occurred on August 24, 1958, shortly after noon, on U. S. Highway 190, near the truck weighing station situated approximately 7 miles west of the Mississippi River bridge, West Baton Rouge Parish. At the scene, the four-lane highway is straight and level; its two east and west bound lanes are separated by a four-inch raised median approximately two feet wide. Moore, traveling westerly in the outside lane, was driving his 1954 International Tractor which was pulling his 1948 Fruehauf grain body, open top trailer which was empty at the time. Kevlin was simultaneously proceeding easterly in the right or outside lane of travel. Moore, traveling at about 30 miles per hour during a rain, passed a tree on the side of the highway and suddenly saw a truck weighing and inspection station approximately 500 to 600 feet ahead. He immediately applied his brakes to stop for the required truck inspection. The vehicle skidded or jackknifed out of control, veered to the left, crossed the median, and the tractor was struck on its right side by the Kevlin station wagon. The impact occurred in the outside eastbound lane.
It is undisputed in the record that Moore, who was 64 years of age at the time of the accident, bought the trailer knowing that it was without dust shields. Following its purchase, he operated the trailer for many years, in all kinds of weather, without any difficulty, failure or malfunctioning of its brakes. Approximately three months prior to the accident, Fruehauf repaired and adjusted the trailer's brakes, but did not install dust shields thereon. Between the time of the repair and the occurrence of the accident, Moore used the trailer without incident. Following the accident, Moore continued to use the trailer, unequipped with dust shields on its brakes, without further mishap, until his deposition was taken in April, 1960.
The record discloses that both the tractor and trailer were equipped with air brakes which are constructed and operate substantially in the following manner: The tractor (truck) portion of the unit is equipped with a motor driven air compressor which supplies air at approximately 105 pounds in a storage tank situated on the tractor. By means of a control valve, pressure in the reserve air tank is maintained at between 80 and 105 pounds, the former being the minimum pressure at which air brakes will function properly. Lines run from the supply tank to an air chamber which actuates the brakes on each tractor wheel. A flexible line from the compressor also furnishes air to a similar storage tank situated on the trailer to supply air for operation of the trailer's brakes which operate in the same fashion as do the tractor brakes. Each air chamber on both tractor and trailer is equipped with an S-cam which is attached to a rotating arm or rod. To the S-cam are attached brake blocks or brake shoes. Air is supplied to the tractor brakes by operation of a foot pedal (brake pedal) inside the tractor. When depressed by the driver, the foot pedal opens a valve which supplies air pressure directly from the tractor storage tank to the various brake air chambers on the tractor. The pressure causes the rotating arm to operate and move the S-cam which forces the brake blocks or shoes against the brake drum of the rotating wheels. The resulting contact or friction supplies the stopping force. As the foot pedal actuates the tractor brakes, it simultaneously actuates a "service line" from the tractor storage tank to the air reservoir on the trailer. At pressure of 6 to 10 pounds, insufficient to operate the brakes, *273 the service line opens a valve on the trailer storage tank which in turn opens a system of relay valves permitting the full force of air from the trailer storage tank to be "dumped" at each trailer brake, thus supplying sufficient air to effectively operate the trailer's brakes. Greater application of the foot pedal releases sufficient air from the tractor storage tank to each tractor brake to stop the tractor. In addition, the tractor is equipped with a hand lever braking device mounted on the steering wheel which controls and operates the trailer brakes only.
It is undisputed that the above described braking system is in use on all similar vehicles and units in operation at present. It is likewise uncontested that separate storage tanks are required on such trailers because the distance which air must travel from the storage tank on the tractor to the trailer wheels is too great to permit efficient operation of trailer brakes. Also conceded is the fact that when air brakes are applied full force, all brakes on tractor and trailer will "lock", meaning the wheels of both units will cease to turn with the resultant loss of steering control. Three of the four experts testifying in the case stated that application of the foot brake causes the tractor brakes to take effect a fraction of a second ahead of those on the trailer because of the distance air has to travel (25 to 30 feet) to reach the trailer brakes. It is further acknowledged that the tractor and trailer must be in alignment, the trailer following the tractor in a straight line, when the brakes are applied. Otherwise such a unit will tend to jackknife. It likewise appears that any misalignment of brakes which cause one brake to hold more than another will enhance the potentiality of jackknifing. The record further establishes that the condition of road surface, such as the existence of bumps, oily spots or other variations can directly affect the tendency of such unit to jackknife when brakes are applied. Additionally, it is shown that potential jackknifing can be influenced by load distribution and also by whether a trailer is loaded or empty.
According to the record, dust shields are constructed of two semi-circular metal halves which fit over the inside of each wheel, encasing the aforedescribed brake mechanism. Where the ends of the two halves meet, an opening estimated at from one-eighth to one-quarter inch is left. The shields are fitted over the brake drums in a manner leaving an estimated one-eighth to one-quarter inch opening around the perimeter of the brake drum to allow the wheel and drum to rotate freely. The clear preponderance of evidence is to the effect that dust shields are primarily intended to keep foreign matter such as rocks, sand, dust and similar abrasives, as well as corrosives, from entering and fouling the brake mechanism causing unnecessary wear and impeding braking efficiency. The evidence also preponderates in favor of the following conclusions: (1) Dust shields are not designed primarily to keep brakes dry and free of water, moisture and other liquid contaminants; (2) they do, however, exclude approximately 95% of the moisture that would otherwise enter a braking system not so protected, and (3) dust shields are installed primarily for the protection of brakes on dump trucks which discharge loads of sand, gravel and other similar material over their axles, and which vehicles in the course of operation are driven into piles of material they discharge.
The theory of appellants' case is that the absence of dust shields on the trailer's brakes readily admitted road surface water and contaminants into the trailer's brakes causing them to malfunction by tardily taking effect, thus creating an imbalance which caused the trailer to "push" the tractor into an alleged jackknife and out of control. Appellants maintain that Fruehauf was negligent in originally constructing the trailer without dust shields to protect its brakes, and in failing to install dust shields thereon when Moore entrusted the *274 trailer to Fruehauf for a brake repair job shortly before the accident in question.
Moore's testimony confirms the basic facts heretofore mentioned concerning his ownership, use, knowledge and operation of the tractor-trailer unit at the time of the accident, and for two years thereafter. In substance, he stated his truck jackknifed on the road surface which was "slick" with water mixed with oil from trucks and other vehicles using the highway. He did not recall relating to the investigating officer that his "brakes locked" when he applied them.
The investigating officer, Trooper Jasper Denicola, stated that Moore told him that when Moore applied his brakes to stop for the inspection station, the brakes locked causing the tractor to jackknife. Denicola also testified that visible marks on the highway indicated Moore's tractor and trailer skidded from the outside westbound lane across the median to the outside eastbound lane of travel.
The accident was witnessed by Robert Worrell who was driving easterly behind the Kevlin station wagon. Worrell noted the Moore truck begin to "weave", cross the median and invade the eastbound lanes. He also observed that the left front of the truck went around and the trailer just "pushed it."
Charles Fresina, passenger in the Worrell vehicle, testified that at the scene of the accident, Moore told him that his brakes locked and his truck jackknifed.
Appellants produced as an expert Alvin Doyle, who has had considerable experience and instruction in the field of automobile mechanics, accident investigation and accident reconstruction, but who holds no engineering degree from an accredited school, college or university. Mr. Doyle examined subject trailer on October 19, 1959, at which time he noted the absence of dust shields on its brakes. His examination, which included driving the tractor-trailer, revealed nothing wrong with the trailer brakes except the lack of dust shields. He acknowledged that dust shields would not keep out all contaminants. Without dust shields, however, he was of the opinion that dust, water, muck and other foreign material would enter the braking system in excess quantities, and would either wet the brake shoes and drum or lodge between them reducing braking efficiency. This occurrence, according to Doyle, produced an imbalance between the brakes on the tractor and trailer. More precisely, Doyle was of the view that water, oil and other contaminants wet the brake drums and brake shoes on the trailer more than the tractor brakes which were protected by dust shields. In Doyle's opinion, this difference delayed the stopping effect of the trailer's brakes which first had to be cleaned and dried by the force and heat of brake application before they could attain stopping capacity equivalent to the drier brakes on the tractor. Doyle stated that as a result of this imbalance, the trailer "overrode" the slower moving tractor and pushed it into a jackknife position with consequent loss of driver control. Doyle also maintained that certain tests conducted by Fruehauf's expert (hereinafter discussed) were worthless for comparison purposes because they were conducted under conditions different from those which existed at the accident scene.
Appellants' other expert, Louis Margot, a brake specialist with many years experience, agreed in most part with Doyle's theory of imbalance produced by the absence of dust shields on the trailer. He conceded that dust shields would not keep brakes absolutely dry but would, in his opinion, keep out 99% of the moisture that would otherwise enter a braking mechanism during rainy weather. Margot contradicted Doyle and all other experts with respect to whether tractor or trailer brakes first took effect. Margot stoutly maintained that trailer brakes came on first. He explained that this was necessarily so because if tractor brakes took hold first, the trailer would have a tendency to "push" the tractor and create a potential jackknife condition. He further explained that trailer brakes coming on before those on the tractor had the effect of creating a *275 pull or drag which tended to keep the units in alignment.
Fruehauf's expert, Dr. William H. Tonn, Jr., possesses a Doctorate in Chemical Engineering with a minor in physics. He also holds membership in numerous engineering societies. His specialty is dealing with problems relating to accidents, including mechanical failure. Dr. Tonn examined subject unit on September 27, 1963. Using Moore's tractor and trailer and some units owned by Fruehauf, he conducted certain tests to determine the effect the presence or absence of dust shields had on braking efficiency under conditions involving saturation of brake mechanisms with water, mud and muck. Using tractors with dust shields and trailers without dust shields, Tonn conducted stopping experiments on a dry concrete surface. He found that with dry brakes, a unit stopped within approximately 33 feet upon full application of brakes while traveling at 25 miles per hour. Running dry with dust shields on both trailer and tractor, the stopping distance was the same. With dust shields removed from the trailer, he saturated the brakes with a fire hose for 15 minutes and found the stopping distance varied by approximately four feet. Then stuffing wet trailer brakes with mud, he found that the vehicles stopped in the same distance as when wet only with water. Tonn conceded the brakes on Moore's trailer were relined before the experiments were conducted. He explained that inspection showed the brakes to be badly worn so they were repaired to approximate their condition at the time of the accident. Tonn also explained that air brakes are self-cleaning in that the brake blocks are so made and applied with such force and generate such heat that they sweep the drums clean and squeeze out all dampness and foreign matter in not more than one-half wheel turn. He found that with wheels saturated, full force application of brakes caused the brakes to lock which indicates maximum braking efficiency. In Tonn's opinion, the time lag in the taking effect of a trailer's brakes under wet conditions is but a fraction of a second and so minute as to be inconsequential. Using a 10 power microscope, Tonn examined photographs of skid marks left by Moore's tractor and trailer. In his opinion, the pictures revealed the brakes were operating and were locked. He so concluded because it appeared that the wheels left two single tire marks proceeding toward the median in a straight line, not sideways, indicating that the wheels were locked in a skid, and that the vehicle was not jackknifing in the true sense. Based upon the photographs and also upon hypothets which recapitulated the circumstances of the accident, it was Tonn's opinion that the accident was due solely to the fact that Moore made an emergency application which locked his brakes. Tonn conceded his tests were run on a dry surface, but explained that they were designed solely to determine the effect, if any, that moisture or mud would have upon the efficacy of a braking system. He concluded that such conditions did not affect either stopping distance or the characteristics of brake application to any significant degree, and that the absence of dust shields on Moore's trailer did not cause the vehicle to go out of control.
William Trampus, Engineer, a Fruehauf employee who specializes in the design of brakes, suspensions and axles, corroborated Tonn's testimony in every essential detail. He further stated that Fruehauf's records show that in 1948, when Moore's trailer was manufactured, dust shields were optional equipment and were not installed on trailers unless specially ordered. He also stated there are no governmental regulations requiring installations of dust shields on either tractors or trucks. Trampus acknowledged that for a period of several years Fruehauf installed dust shields on all its trailers as standard equipment, but that in recent years had returned to the policy of making such devices optional, which also was its present policy. He further stated that whereas dust shields benefited vehicles which dumped loads over their axles, nevertheless the shields posed certain disadvantages. Among these were (1) making *276 brake inspection more difficult; (2) causing the brakes to run hotter thereby increasing wear, and (3) trapping such foreign matter which entered the brake system and which would otherwise exit therefrom thereby increasing wear and lessening brake efficiency. According to Trampus, approximately 30,000 to 50,000 Fruehauf trailers are presently being manufactured annually, and none are provided with dust shields as standard equipment. He also testified that approximately 60 to 70% of trailers being built at this time are ordered without dust shields.
We find no error in the trial court's admission of evidence of the tests run by Dr. Tonn. It is of no material consequence that the tests were conducted on a dry surface, whereas the accident in question occurred on a wet highway. As explained by Dr. Tonn, the sole purpose of the tests were to determine the effect which the presence or absence of dust shields would have upon the functioning of the braking mechanism of a trailer operated under conditions where water or mud was present in the braking system. We find, as did the trial court, that the tests were of probative value in determining the alleged fault of the manufacturer in this instance.
Appellants' charge of negligent design on the part of Fruehauf must be determined in the light of the well established rule that a manufacturer or vendor of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third party, who without fault on his part, sustains injury caused by a defect in the design, fabrication or manufacture of the article or instrument, if the injury might have been reasonably foreseeable or anticipatable. Arnold v. United States Rubber Company, La.App., 203 So.2d 764; Meche v. Farmers Drier and Storage Company, La.App., 193 So.2d 807; Smith v. New Orleans & Northeastern Railroad Company, La.App., 153 So.2d 533; Samaha v. Southern Rambler Sales, Inc., La.App., 146 So.2d 29.
The foregoing rule requires the manufacturer to exercise reasonable care in the design of its products which are of such nature that, if not carefully made, can cause foreseeable injury to persons using the products for purposes which the manufacturer may reasonably expect they will be employed, and also to those whom the manufacturer may reasonably expect to be endangered by such probable use. Failure to exercise such care renders the manufacturer liable if injury results from lawful use of the product in a manner and for a purpose which the manufacturer may be deemed to reasonably expect. However, such liability does not extend to the whole world, nor does it involve all risks that might result in injury.
By its very nature, the criteria of reasonable care, applicable in instances of this nature, must be flexible inasmuch as it depends on the peculiar facts and circumstances of each individual case. Even though a design may not be perfect or foolproof, it is still not defective provided reasonable care is taken in its adoption. On the other hand, neither custom nor usage in manufacturing style, nor prolonged marketing and use without significant injury producing accidents, can exonerate the manufacturer from liability for reasonably foreseeable injury resulting from use. These latter factors are merely part of the attending circumstances which must be weighed and considered in each case of this nature. We are of the further view that the duty of reasonable care, applicable to design, also obtains with respect to fabrication and manufacture of a product.
Our law imposes upon plaintiff the burden of establishing lack of reasonable care on the part of the manufacturer in cases of this kind. Meche v. Farmers Drier & Storage Company, supra; Arnold v. United States Rubber Company, supra.
The charges that Fruehauf was negligent in its inspection of the trailer's *277 brakes and failing to install dust shields thereon is also without merit. Fruehauf concedes its awareness of the absence of dust shields when the requested repairs were made. The real issue, therefore, is not whether Fruehauf's inspection failed to reveal the lack of dust shields but whether it was negligent in not installing dust shields as part of the repair project. We first note that Moore made no request that dust shields be installed. Under our jurisprudence a mechanic who contracts to repair a defect in a motor vehicle does not impliedly contract to inspect and repair neighboring parts. Glisson v. Colonial Buick, Inc., La.App., 156 So.2d 271; Jaeger v. Herald, La.App., 186 So.2d 365.
Viewed in light of the foregoing applicable rules, we find that plaintiff has failed to establish that Fruehauf was negligent in either manufacturing the trailer without dust shields or failing to install dust shields thereon when it undertook to repair the trailer brakes.
Our analysis of the record considered, it suffices to state that appellants have failed to establish by a preponderance of evidence that the absence of dust shields constituted defective design because their presence would have eliminated a brake imbalance which caused the tractor-trailer in question to go out of control when its brakes were applied under the circumstances shown herein. We conclude that plaintiffs have failed to establish the reasonable foreseeability of accident and injury resulting from the absence of dust shields or that installation of shields would have made operation of the trailer less hazardous. On the contrary, we find the weight of the evidence shows that Moore lost control of his vehicle because he locked its brakes when he apparently attempted an emergency stop.
The judgment of the trial court is affirmed; all costs of these proceedings to be paid by appellants.
Affirmed.