270 So.2d 157 (1972)
Curtis H. WILLIAMS, Plaintiff-Appellee,
v.
ALLIED CHEMICAL CORPORATION et al., Defendants-Appellants.
No. 9040.
Court of Appeal of Louisiana, First Circuit.
November 13, 1972.
Rehearing Denied December 26, 1972.
Writs Refused January 30, 1973.
*158 France W. Watts, III, Watts & Watts, Franklinton, for defendant-appellant Allied Chem. Corp.
Richard L. Muller and Robert A. Anderson, Jr., Covington, for defendant-appellant Misla Farm Center, Inc.
Jim W. Richardson, Jr., Richardson & Lilly, Bogalusa, for plaintiff-appellee.
Before SARTAIN, BLANCHE and EVERETT, JJ.
SARTAIN, Judge.
This is an appeal from a judgment rendered June 21, 1971, in favor of Curtis Williams, plaintiff-appellee-appellant, and against Allied Chemical Corporation and Misla Farm Center holding Allied and Misla liable in solido for damages caused by the death of two of plaintiff's cattle. The judgment dismissed the claim against Fred Bass, individually, and no appeal has been taken from that portion of the judgment.
The case arose out of the death of two of plaintiff's cows in November of 1969. On November 7, 1969, plaintiff purchased from Misla Farm Center, Inc. fifty-five (55) gallons of Urea-Molasses Liquid Feed, a protein supplement for cattle manufactured by Allied Chemical. Mr. Williams then transported the liquid feed in his own drum to his dairy farm in Washington Parish. Three or four weeks later he poured a gallon or more of this feed in an old ice box tray about six (6) inches deep and three feet long and placed the tray with the feed in a lot containing about a dozen dry cows. Within an hour of his placing the tray in the lot two of the cows which plaintiff saw eating the liquid feed became ill. Plaintiff immediately removed the tray which now contained only a small amount of the liquid and telephoned Dr. John Thornton, a veterinarian.
When Dr. Thornton reached the farm a short time after receiving the call the two cows were dead. Dr. Thornton performed an autopsy and when he cut into the stomach of the dead cows he noted a strong odor of ammonia. When he found that the cows had just eaten urea-molasses he immediately concluded that the urea content in the feed was probably too high and had caused the formation of the ammonia causing the cows' death. Dr. Thornton performed no other tests on the animals and did not examine any of the other cattle in the lot. A sample of the liquid feed was sent for laboratory analysis and found to contain the standard content of urea. *159 However, it was established through testimony at trial that the cows died from having ingested the liquid at a too rapid rate thereby causing the urea poisoning.
Due to the method of distribution of this type of liquid feed no label is placed thereon by the manufacturer because the purchasers usually transport the feed in their own containers, as was done in this case. However, a pamphlet and brochure is placed with the distributor by the manufacturer for distribution to the purchaser when the feed is sold. The brochure, which was in the possession of Misla Farm Center, was introduced into evidence at trial. It gives a description of the contents of the feed and cautions purchasers to use the feed only in accordance with the directions. The directions instruct users to feed their animals "free choice" as a diet supplement. The brochure further depicts cattle eating the supplement from what was described at trial as a "lick wheel". Testimony established that a "lick wheel" is a device which consists of a tank containing the liquid and a wheel which turns into the tank and coats itself with the liquid feed. Cattle lick the wheel thereby removing the liquid from it and at the same time turning it to pick up more feed. Testimony established the advantage of this method was that it limited consumption to the amount of liquid on the wheel and thereby limited the rate of ingestion. There was also testimony to the effect that this is the only proper method to feed this liquid supplement to cattle and that this type of feeding is what was meant by the term "free choice" in the brochure.
Mr. Fred Bass, one of the owners of Misla Farm Center, testified that he had discussed the liquid feed and the use of a "lick wheel" with Mr. Williams several weeks before the actual purchase of the feed. Bass did not tell the plaintiff that if intake of the supplement was not limited by some device that it could result in the death of cattle. Bass testified that he left the brochures discussed above at plaintiff's home one day while plaintiff was not there.
When plaintiff went to Misla Farm Center to make the actual purchase, Mr. Lloyd Bass made the sale and Joseph Galloway pumped the feed into the drum which Williams brought with him for that purpose. Both Lloyd Bass and Galloway testified that they advised Williams to use a "lick wheel" in feeding the supplement to his cattle. Williams denies that he received any instructions on the use of a lick wheel as the proper "free choice" method of feeding the liquid to his cattle at that time.
Upon these facts the trial court ruled that both the manufacturer, Allied Chemical, and the seller, Misla Farm Center, were negligent in failing to sufficiently instruct Williams in the proper method of feeding the supplement and in failing to warn him of the danger of using the feed other than by the "lick wheel" method. The trial court also ruled that there was no contributory negligence on the part of plaintiff Williams and dismissed the suit against Fred Bass, individually. From this judgment defendants, Misla Farm Center and Allied Chemical perfected suspensive and devolutive appeals. Plaintiff has also appealed from that portion of the judgment relating to the amount of recovery allowed.
The principal issues presented by this appeal are: (1) the sufficiency of the warning or instructions given to plaintiff as to the proper method of using this liquid feed; (2) the contributory negligence of the plaintiff, and (3) the amount of damages allowed.

(1) SUFFICIENCY OF THE WARNING
Based on the testimony at trial and specifically the laboratory report on the liquid feed sample the lower court concluded that there was no defect in the product sold and therefore absolute liability could not be used as a basis for recovery against *160 the manufacturer of the feed or the distributor. However, liability was predicated on the basis that both the manufacturer and vendor of the substance had a positive duty to warn the purchaser of possible dangers in the use of the feed which the lower court found they had failed to discharge.
In his written reasons for judgment the trial judge stated:
"There was no defect in the product sold and therefore the principles of implied warranty are not applicable. However, the Courts of this state have applied the rules of tort to manufacturers, vendors, and dealers in dangerous substances, and have established the duty on the part of such persons to warn of the dangers in the products. This rule was stated in Miller v. New Zealand Insurance Company, 98 So.2d 544 at 546:
"`It is recognized by our jurisprudence that a manufacturer of a dangerous substance, or one which might easily result in injuries to persons or property, owes a duty to those likely to come in contact with it, to warn of danger inherent in the product. The following extract is from 65 C.J.S. verbo Negligence, Sec. 100, p. 626 "`. . . A manufacturer, vendor or others dealing in dangerous chemicals and drugs owe to the public a positive and active duty to limit the danger by labeling or otherwise conveying knowledge of the danger. . .'"
In the Miller case plaintiff sued for damages to the enamel of certain lavatories in plaintiff's place of business caused by the use of a chemical cleaning fluid thereon which was sold by defendant's insured. The Court affirmed a judgment for plaintiff holding that the proximate cause of the damages was the erroneous and false directions as to the use of the cleaning fluid given to plaintiff's employees by defendant's insured.
In the later case of Larance v. F.M.C. Corporation, La.App., 192 So.2d 628 (2nd Cir. 1966), also cited by the lower court in its reasons for judgment, plaintiff was allowed recovery for damage to his peach trees by use of a chemical fertilizer manufactured by defendant. There were no instructions as to the proper method of use of the chemical printed on the label other than the words "spray or dust". It was established that the chemical was not to be used in its undiluted form. The court held that the manufacturer of this chemical compound and the dealer were derelict in their duty to print or disseminate instructions concerning the proper use of the compound and were thus liable for the loss sustained by plaintiff. Neither the brochure nor the oral instructions given Williams sufficiently explained the danger of using the liquid feed. The use of the words "free choice" in describing the method of using the liquid feed was ambiguous and the danger of using a method of feeding other than by the "lick wheel" was not explained by the instructions.
Appellants contend that the oral instructions allegedly conveyed to plaintiff at the time of purchase of the feed and on a prior occasion were sufficient to adequately inform him of how the feed was to be used. In support of this contention appellants cite the case of Richardson v. De-Luca, 53 So.2d 199 (Orleans La.App.1951) in which plaintiff was denied recovery for injuries sustained when an explosion occurred while he was using a net preservative solution which he had purchased from defendant. The court found that plaintiff was orally told not to use the solution while smoking. Even though he was not advised by the warning that it was unsafe to use it near fire or flame, such warning was held sufficient to bar recovery by plaintiff for injuries sustained by an explosion of the solution while it was being used within ten feet of an open burner.
Appellant Allied Chemical also relies on the case of Singleton v. Olin Matheson *161 Corporation, 131 So.2d 329 (La.App.3rd Cir. 1961) wherein the court denied plaintiff's claim for damage resulting from a shotgun shell exploding because the wrong type of shell was used in the gun. There was a warning on the box of shells to the effect that the shells should not be used in guns having a Damascus or twist barrel but the warning did not advise as to the possibility of the explosion when the shells were used in an improper type of gun. The Court held that the danger of using the shells in the wrong gun type was so obvious that a warning as to the particular consequences was not called for.
In the case at bar the consequences of using another method of feeding other than the "lick wheel" method allegedly described in oral instructions to plaintiff were not so obvious as was the possibility of danger in the use of the wrong shells in Singleton. Also, it is significant to note that although plaintiff was instructed in the use of the lick wheel feeding method he was never warned of any possible danger to his cattle by feeding them the liquid other than by the lick wheel.
Appellants also contend that plaintiff failed to prove the proximate cause of the death of the two cows. It is argued that the testimony does not reflect that the deaths were caused from eating the liquid feed. Appellants rely on the case of Olano v. Rex Milling Company, La.App., 154 So. 2d 555 (1st Cir. 1963) in which recovery was denied plaintiff for the death of his horse allegedly caused by ground glass contained in horse feed manufactured and sold by defendant. The court held that the evidence was insufficient to establish by a reasonable preponderance that the death was caused by the glass in the feed. The expert veterinarian could not testify exactly as to what killed the horse. However, in the instant case, Dr. Thornton testified that the cause of death of the cows was urea poisoning and he based his opinion as to the cause of death on the history of the case, the symptoms described, the fact that the cattle had just eaten the liquid feed supplement containing urea, and on his finding of the strong ammonium odor in the rumen of the cows when he performed an autopsy on them. Dr. Thornton further testified that in his opinion death was caused in this case by the cattle eating the feed too fast which caused a release of ammonium in the cattle, thereby poisoning them.
Appellants further rely on the case of Buatt v. Petty, La.App., 15 So.2d 825 (2nd Cir. 1943) in which plaintiff was denied recovery for the value of a cow alleged to have died as a result of eating poisonous fertilizer made accessible by the negligence of the defendant's employees. There was no direct evidence to show that the cow actually had eaten the poison and therefore the court held that the plaintiff had not established an essential element of his case. In this case, however, plaintiff testified that he actually saw the two cows which subsequently died eating the liquid feed.

(2) CONTRIBUTORY NEGLIGENCE
Appellant Allied Chemical argues in brief that the loss of the two cows was due to plaintiff's own negligence and improper use of the liquid feed. Also it is the contention of appellant that plaintiff failed to use the feed in the proper manner and failed to take any steps whatsoever to ascertain the proper method of using the feed.
In support of this contention it is argued under Singleton v. Olin Matheson Chemical Corporation, discussed above, that the consequences of the use of the feed other than by a "lick wheel" were such that they were readily cognizable to plaintiff and therefore there was no duty to warn on the part of defendants. Thus, it is argued by appellants that plaintiff was contributorily negligent in using the feed in the manner which he did.
In Weber v. Fidelity and Casualty Company of New York, La.App., 236 So.2d 616 *162 (1st Cir. 1970), we denied recovery for the loss of cattle due to arsenic poisoning partially on the grounds that he had not substantially complied with the instructions given for use of the cattle dip which caused the poisoning. Certiorari was granted and the denial of recovery by the appellate court was reversed at 259 La. 599, 250 So.2d 754 (1971) by the Supreme Court. In discussing the alleged improper use of the dip on a "hot day" the Supreme Court stated at page 758: "Nothing on the label indicated that the cows will die if sprayed on such a day." Likewise, in the case at bar, nothing was indicated to plaintiff that if the feed was used other than by a lick wheel that his cows would die.
The trial court correctly found no contributory negligence on the part of plaintiff. As aptly stated by the trial judge in his written reasons for judgment:
"Assuming Mr. Williams was instructed in the use of the lick wheel, he was not instructed of the danger of the feed if some method were not used to limit intake. Thus, it was a natural assumption on his part to use a free choice method other than one which would limit intake because neither written nor oral instructions had explained the dangerous nature of urea."

(3) ISSUE OF DAMAGES
Plaintiff claimed damages for the two cows which died, for five calves which were allegedly aborted due to the effects of the liquid feed, and for loss of milk production. The lower court rendered judgment allowing $825.00 for the two cows which died and denying recovery for the allegedly aborted calves, holding that this portion of the claim was too speculative. In addition, the trial court held that the loss of future milk production was not proven and therefore denied this claim also. Plaintiff appeals from that portion of the judgment denying recovery for the aborted calves and the loss of future milk production. Defendants allege as error the allowance of damages for the loss of the two cows.
Plaintiff concedes that his bond was not filed timely and he did not answer defendants' appeal. Accordingly, we cannot consider plaintiff's assertions of error on the judge a quo's refusal to grant him damages for the aborted calves and loss of future milk production.
As to defendant's contentions, it is urged that plaintiff failed to prove the value of the two cows by proper evidence. Plaintiff was the only witness to testify as to the value of the two cows. He stated that he estimated the value of one of the cows at around $375.00 to $400.00 and the other at about $450.00. He further testified that one of the cows was raised by him and that he had purchased the other, but he produced no records as to the cost of that cow nor could he recall what he paid for her.
Appellant cites the case of Goynes v. St. Charles Dairy, Inc., La.App., 197 So. 819 (1st Cir. 1940) in which the court held that a litigant cannot estimate in globo his damages out of the pocket of his adversary, but must make his claim certain and support it by competent evidence. It has also been stated that when it is clear that a party has suffered damages but is unable to establish them, the courts have discretion to fix the amount, but when the damages sought are easily proven and such proof is simply not put forth this rule of discretion is not applicable. Cotton v. Needham, La.App., 253 So.2d 674 (1st Cir. 1971), writ refused 260 La. 129, 255 So.2d 353 (1971).
Appellant contends that expert testimony should have been offered to establish or at least corroborate the plaintiff's estimate of the value of the two cows. In support of this contention appellant relies on several cases dealing with the estimation of the value of animals. In Meredith v. Kidd, La.App., 147 So. 539 (2nd Cir. 1933) damages were allowed for the death of two mules after a dealer in mules testified as to their value. In Meaux v. Gulf Insurance, La.App., 182 So. 158 (1st Cir. 1938) a claim for the value of a horse killed in *163 an auto accident was rejected when the only evidence put forth as to its value was the plaintiff's own testimony. In Courtney v. Ousley, 79 So.2d 142 (1st Cir. 1955) damages were allowed for the death of a cow based on an estimate of value by an "experienced cow man". Also, in Kennedy v. Strong, La.App., 141 So.2d 70 (2nd Cir. 1962), damages were allowed for the death of a quarter horse based on the testimony of expert witnesses as to its value.
While it is true that plaintiff's testimony stands alone as to the value of the two cows, we note that at the time of their loss he was active in the dairy business and owned a herd of fifty to fifty-five cows. The trial judge obviously viewed him as a person knowledgeable on the subject of the value of milk cows. In view of these factors, we do not consider that he abused the discretion vested in him in his assessment of damages based on plaintiff's testimony.
Accordingly, for the above reasons, the judgment of the District Court is affirmed at appellants' costs.
Affirmed.