Roy Paul PEREZ, Individually, etc., et al., Plaintiffs-Appellants,

v.

FORD MOTOR COMPANY, Defendant-Appellee,

Traders & General Insurance Company, Intervenor.

No. 73–1805.

United States Court of Appeals, Fifth Circuit.

July 17, 1974.

Rehearing and Rehearing En Banc Denied Oct. 7, 1974.

Harvey J. Lewis, Samuel C. Gainsburgh, New Orleans, La., Jack B. Wise, Thibodaux, La., for plaintiffs-appellants.

Robert G. Hebert, New Orleans, La., for Truman Hendley, amicus curiae.

Allen R. Fontenot, William S. Penick, New Orleans, La., for defendant-appellee.

Ben W. Lightfoot, Baton Rouge, La., for intervenor.

Before TUTTLE, GEWIN and RONEY, Circuit Judges.

RONEY, Circuit Judge:

Seven years ago Roy Paul Perez and his young daughter were seriously injured and his wife was killed when the cab or passenger compartment of a 1966 Ford F–100 pickup truck in which they were riding separated from the chassis and overturned after being struck from the rear by another Ford automobile. The District Court ruled, as a matter of Louisiana law, that this collision did not constitute "normal use" of the vehicle and therefore Ford Motor Company could not be liable for design and fabrication negligence in manufacturing the truck. We reverse, holding that the collision in this case does not legally preclude recovery based on Louisiana products liability concepts.

Perez introduced evidence that Ford secured the F–100's cab to its chassis with six sheet metal flanges, each approximately the thickness of a quarter. Should these flanges sever and the cab separate from the chassis by as much as one inch, the steering mechanism would be affected causing the driver to lose control of the truck. An expert witness testified that the rear-end collision occurred at a speed differential of approximately thirty miles per hour, which would be sufficient to sever the retainer flanges and free the cab from the chassis. Plaintiff contends the resulting loss of control of the truck compounded the injuries sustained by its passengers.

After four days of trial the District Court granted defendant Ford's motion for directed verdict. Understanding the latest statement on Louisiana products liability law to be that a plaintiff must prove the product to be "unreasonably dangerous to normal use," the District Court held as a matter of law that a rear-end collision at a thirty miles an hour speed differential was not "normal use" of the vehicle. The trial was aborted at this time because no party felt it necessary to go forward when the Court announced that it would, as a matter of law, exclude Ford from any liability for injuries which occurred in this accident.

On this appeal, Perez asserts three grounds for reversal: (1) error in holding that as a matter of law the collision involved in this case could not constitute "normal use" of the vehicle; (2) error in not allowing plaintiff's negligence case to go to the jury after foreclosing his products liability theory; and (3) error in excluding evidence establishing that the allegedly defective parts would have failed from comparable noncollision stresses.

I.

Largely unsettled in most jurisdictions is the current controversy in accident law concerning what is loosely termed the "crashworthiness" of automobiles. The question of whether the intended purpose for which an automobile is designed and manufactured in-

cludes the possibility of collisions has received conflicting treatment in various jurisdictions. Two polar opinions form the base of this dichotomy: Evans v. General Motors Corp., 359 F.2d 822 (7th Cir. 1966), cert. denied, 385 U.S. 836, 87 S.Ct. 83, 17 L.Ed.2d 70 (1967), and Larsen v. General Motors Corp., 391 F.2d 495 (8th Cir. 1968).

In *Evans*, the Court affirmed the dismissal of a complaint alleging negligence, breach of implied warranty, and strict liability flowing from the alleged defect in design of the automobile's frame because

> [t]he intended purpose of an automobile does not include its participation in collisions with other objects, despite the manufacturer's ability to foresee the possibility that such collisions may occur.

359 F.2d at 825. *Accord*, Schemel v. General Motors Corp., 384 F.2d 802 (7th Cir. 1967), cert. denied, 390 U.S. 945, 88 S.Ct. 1030, 19 L.Ed.2d 1134 (1968); Shumard v. General Motors Corp., 270 F.Supp. 311 (S.D.Ohio 1967); Willis v. Chrysler Corp., 264 F.Supp. 1010 (S.D. Tex.1967). *See also* Hoenig & Werber, Automobile "Crashworthiness": An Untenable Doctrine, 20 Clev.St.L.Rev. 578 (1971).

The *Larsen* court took an opposite approach. Although recognizing that there was no duty on the automotive manufacturer to design an accident-proof vehicle, it held the manufacturer to a duty of "reasonable care in the design of its vehicle . . . in the event of a collision." 391 F.2d at 502. This duty was premised on the fact that collisions are within the normal use of an automobile:

> While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts. . . .
>
> .     .     .     .     .     .
>
> The intended use and purpose of an automobile is to travel on the streets and highways, which travel more often than not is in close proximity to other vehicles and at speeds that carry the possibility, probability, and potential of injury-producing impacts. The realities of the intended and actual use are well known to the manufacturer and to the public and these realities should be squarely faced by the manufacturer and the courts.

391 F.2d at 502, 503. *Larsen* and its progeny have recognized that collisions are a foreseeable and inevitable consequence of everyday automobile use given our nation's crowded highways and have imposed upon manufacturers "a duty to guard against needlessly aggravated injuries." Turcotte v. Ford Motor Corp., 494 F.2d 173, 182 (1st Cir. 1974). *See also* Passwaters v. General Motors Corp., 454 F.2d 1270 (8th Cir. 1972); Grundmanis v. British Motor Corp., 308 F. Supp. 303 (E.D.Wis.1970); Dyson v. General Motors Corp., 298 F.Supp. 1064 (E.D.Pa.1968).

■ Although it is settled jurisprudence in Louisiana that a species of strict liability in tort is available against manufacturers for defects in their products,[1] the Louisiana courts have not decided the question of whether the intended use of an automobile includes the possibility of collisions. In fact, the Louisiana courts do not speak in terms of the "intended use" of any product, but rather in terms of the "normal use." Both sides rely on Weber v. Fidelity & Casualty Ins. Co., 259 La. 599, 250 So.2d 754 (1971) as a leading decision concerning Louisiana products liability law.

■ In *Weber*, the Louisiana Supreme Court established that a manufacturer is liable for injuries caused by a

---

1. *See* Welch v. Outboard Marine Corp., 481 F.2d 252 (5th Cir. 1973); Soileau v. Nicklos Drilling Co., 302 F.Supp. 119 (W.D.La. 1969); Weber v. Fidelity & Casualty Ins. Co., 259 La. 599, 250 So.2d 754 (1971).

product which is unreasonably dangerous to normal use or defective by reason of its hazard to normal use. In the words of Justice Albert Tate, Jr.:

A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving the product was defective, i. e., unreasonably dangerous to normal use, and that plaintiff's injuries were caused by reason of the defect. . . .

If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them.

250 So.2d at 755, 756.

■ The plaintiff's burden of proof in a products liability case, as stated by the court in *Weber*, is two-tiered. The plaintiff first must prove that the manufacturer's product was defective. In order to establish defectiveness, the plaintiff must show that the product was in normal use and that the product was unreasonably dangerous in that use. After proving that the product was defective for normal use, the plaintiff must then show that his injuries were caused by the defect. When, in the instant case, the District Court ruled against plaintiff Perez on the basis that the rear-end collision in question did not constitute a normal use of the manufacturer's product, the questions of the unreasonably dangerous nature of the construction, manufacture or design of the pickup truck and the causation of plaintiff's injuries remained unresolved.

In *Weber*, seven prize winning cattle were killed when sprayed with a cattle dip found to contain an excessive proportion of arsenic. After finding that the plaintiffs properly mixed the solution, the Court discussed the alleged improper use of the dip on a "hot day":

Likewise, the suggestion that untoward effects were produced by the spraying being done on a hot August day is not impressive. It is based upon one of the numerous directions as to use of the product, designed (according to its wording) to avoid "a burning of the skin." Nothing on the label indicated that the cows will die if sprayed on such a day.

250 So.2d at 758.

In another similar Louisiana case, Williams v. Allied Chemical Corp., 270 So.2d 157 (La.Ct.App.1972), more cattle were poisoned, this time through the "improper" feeding of a protein supplement. Plaintiff had dispensed the feed via "free choice" instead of the slower "lick wheel" method as depicted in the manufacturer's instructions. In holding the manufacturer liable, the court referred in the above passage in *Weber* and stated that

Nothing was indicated to plaintiff that if the feed was used other than by a lick wheel that his cows would die.

270 So.2d at 162.

■ The difficulty in applying the definition of "normal use" as outlined by the Louisiana courts in *Weber* and *Williams* to the facts of the Perez accident is that, under the facts of those cases, the injured parties had complete control over the use of the allegedly defective products. Young Weber mixed the solution of defective cattle dip himself and Williams intentionally employed the "free choice" method of administering the protein supplement to his cattle. In the case *sub judice*, however, there is no evidence other than that Perez was driving the pickup truck in a normal manner, *i. e.*, at a legal rate of speed on an adequate highway, when this normal

use of his truck was interrupted by a collision from the rear with another vehicle. The concept of "normal use" as it is factually defined by the *Weber* and *Williams* cases is not broad enough to cover a situation where the ordinary use of a product by the plaintiff is altered or interrupted by the actions of a third party.

■ Following what we believe the Louisiana courts would decide, we hold that the District Court erred in directing a verdict for defendant Ford on the grounds that, as a matter of law, a rear-end collision at a thirty miles an hour speed differential was not "normal use" of the Perez vehicle. Under our reading of the *Weber* case, the term "normal use" refers to the use of the product by the injured party or parties. In the instant case, normalcy refers to the use of the truck, not to the type or severity of collision encountered. Thus, the controlling fact is the use to which the vehicle was being put at the time of the accident and not the accident itself. If the vehicle was being used to travel on the streets and highways in the course of routine driving, it meets the "normal use" requirement found in Louisiana products liability jurisprudence. The fact that it was involved in an accident or that the accident involved uncommon occurrences does not legally preclude a claim predicated on defects in design or manufacture.

Assuming that Perez can prove that his use of the truck on the night of the tragic accident was normal, he still must meet the further proof which the Louisiana Supreme Court established in the *Weber* case, *i. e.,* he must show that the product was defective and that such defective product caused his injuries. In other words, he now must prove that, under the facts and circumstances of the accident, the truck, as constructed, was unreasonably dangerous.

■ This Court reviewed the Louisiana definition of the term "unreasonably dangerous" in the recent case of *Welch* v. *Outboard Marine Corp.*, 481 F.

2d 252 (5th Cir. 1973). In *Welch*, a young boy was injured when the lawn mower which he was operating threw a piece of wire from its rear. There was conflicting expert testimony as to whether the design of the mower was unreasonably dangerous for normal use. Affirming the District Court's judgment in favor of the manufacturer, we held that

> a product is defective and unreasonably dangerous when a reasonable seller would not sell the product if he knew of the risks involved or if the risks are greater than a reasonable buyer would expect.

481 F.2d at 254. We approved a jury charge substantially to that effect. In the instant case, Perez on remand may persuade the trier of fact that the Ford pickup truck was designed, manufactured or constructed in such a manner that a reasonable seller would not have sold the vehicle if he had known that the cab would separate from the chassis under certain conditions and that the risk of such separation was more than a reasonable buyer would expect.

We are not saying that an automobile manufacturer has a duty to produce a vehicle which provides absolute safety for passengers under any and all conditions. We are saying that plaintiff Perez should have the opportunity to present his evidence to a jury to prove that his Ford pickup truck was unreasonably dangerous when involved in a rear-end collision at a thirty miles an hour speed differential. No reasonable person would expect a truck to sustain such an accident without the slightest dent or injury to its passengers. But the question is whether what happened in the collision should have happened. We believe that reasonable men could differ as to whether or not the design, manufacture, or construction of the Perez truck was unreasonably dangerous under these circumstances.

## II.

■ Neither the argument of Perez on appeal nor the record of the proceed-

ings in the lower court clearly reveals the grounds upon which the District Court directed a verdict in favor of defendant Ford on the plaintiff's negligence theory. A close review of the record suggests that the District Court concluded that the rear-end collision which it ruled was not a "normal use" under the plaintiff's strict liability theory also precluded the plaintiff from bringing an action against defendant Ford for negligence in design, manufacture or construction of the pickup truck in question. As we already have stated that the "normal use" of a product must be determined by the injured party's actual use of the product and not the function of intervening forces upon that use, we also hold that the District Court erred in directing a verdict in favor of defendant Ford on the issue of negligence, just because the automobile was involved in this collision.

■ Under Louisiana law, as stated by the Court in Leathem v. Moore, 265 So.2d 270 (La.Ct.App.1972),

. . . a manufacturer or vendor of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third party, who without fault on his part, sustains injury caused by a defect in the design, fabrication or manufacture of the article or instrument, if the injury might have been reasonably foreseeable or anticipatable.

265 So.2d at 276. Apparently, the District Court, in the case *sub judice,* decided that the rear-end collision was not such an injury which under *Leathem,* might have been reasonably foreseeable or anticipatable. On remand, Perez should be allowed to present evidence to prove that defendant Ford was negligent in the design, manufacture, or construction of the pickup truck. The question of whether or not the collision in question was a reasonably foreseeable or anticipatable event is, in essence, a question of fact for the jury.

### III.

As to the assertion of Perez on appeal that the District Court erred in excluding evidence establishing that the allegedly defective parts would have failed from comparable noncollision stresses, we again find both the argument of Perez and the record of the proceedings in the District Court to be unclear. Apparently, however, the District Court excluded the plaintiff's evidence on the basis that the rear-end collision was the central, operational fact in the instant case and that evidence of product failure under comparable noncollision stresses was not relevant to either the plaintiff's action in strict liability or his action in negligence. Under the theory of our decision, the District Court can reexamine its ruling as to whether evidence as to product failure under comparable noncollision stresses has relevance both to the plaintiff's strict liability action and to his negligence action.

Reversed and remanded.