Willie BYRD, Plaintiff-Appellee,

v.

HUNT TOOL SHIPYARDS, INC. et al., Defendants,

Pulmosan Safety Equipment Corporation, Defendant-Appellant.

No. 80-3084.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 1, 1981.
On Petition for Rehearing July 8, 1981.

Johnston & Duplass, Robert M. Johnston, Satterlee, Mestayer & Freeman, A. D. Freeman, New Orleans, La., for defendant-appellant.

Gertler & Gertler, Meyer H. Gertler, Rodney P. Vincent, New Orleans, La., for plaintiff-appellee.

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS,* District Judge.

SPEARS, District Judge:

This is a products liability case initiated by Byrd against Pulmosan Safety Equipment Corp. (Pulmosan), an industrial safety equipment manufacturer. Byrd, a sandblaster-painter at the Hunt Tool Shipyards (Hunt Tool) from 1965 to 1970, was furnished a Pulmosan H–30–G hood to protect him from the deleterious effects of silica dust. In 1977, Byrd was forced to discontinue working because of a respiratory ailment, which was diagnosed as silicosis, a disabling disease invariably resulting in premature death. The jury determined that Byrd was exposed to dangerous concentrations of silica particles at Hunt Tool, which proximately resulted in his contracting silicosis. As a result, judgment was entered for Byrd in the amount of $150,000.00, plus interest from the date of judgment. Pulmosan appeals from what it considers an incorrect verdict based on the exclusion of probative medical evidence, and inadequate jury instructions. Byrd cross-appealed, alleging that the trial court incorrectly determined the date of the commencement of interest. We affirm the district court's determination of liability and damages; however, finding error in the date of the commencement of interest, the judgment is amended to allow legal interest to run from the date of judicial demand.

■■■ Initially, Pulmosan alleges error for the exclusion of a medical report which was probative on the issue of causation. Pulmosan contends that the evidence was admissible as an exception to the hearsay rule, Rules 803(6), 803(24), and 804(b)(5), Federal Rules of Evidence, and that the exclusion thereof was an abuse of discretion. However, in our opinion the exclusion of the medical report was not erroneous, and did not amount to an abuse of discretion. Under Rule 803(6), the business records exception, it is the duty of the proponent to establish circumstantial guarantees of trustworthiness. Pulmosan neither subpoenaed any business records, nor called a custodian or other qualified witness to properly identify the report. Thus, it failed to lay a proper foundation to introduce the report under that rule. Concerning exceptions contained in Rules 803(24) and 804(b)(5), in order to admit the evidence the court must determine that it is more probative on the point for which it is offered than any other evidence the proponent can procure. Here, the report offered for admission was approximately a year and one-half old. The trial court allowed Pulmosan to have Byrd examined by any medical expert of its choice prior to trial. Given the nature of silicosis, which is a progressive disease, the report could hardly have been more probative of the current medical condition of Byrd than the two more recent reports.

The case proceeded to trial on two distinct theories of liability, to wit, strict liability for a defective product, and negligent failure to warn of inherent limitations of a product. Pulmosan contends that the district court misapplied the tenets of the leading cases in Louisiana products liability law. In particular, Pulmosan argues that the question of adequate warning was the sole basis of liability under both theories of re-

---

* Adrian A. Spears, of the Western District of Texas, sitting by designation.

covery. Since the adequacy of warning is predicated on the exercise of due care, a negligence concept, Pulmosan argues that the trial court erred when it instructed the jury to consider the sufficiency of the warning with regard to Byrd only, and thus, by-passed the intermediate sophisticated purchaser, Hunt Tool.

■ In reviewing the trial court's instructions to the jury, it is this court's duty to consider the charge as a whole, and from the viewpoint of the jury. "If the charge in general correctly instructs, even though a portion is technically imperfect, no harmful error has been committed." *Troutman v. Southern Railway Co.*, 441 F.2d 586, 590 (5th Cir. 1971), *cert. denied*, 404 U.S. 871, 92 S.Ct. 81, 30 L.Ed.2d 115 (1971); *accord, Shelak v. White Motor Co.*, 581 F.2d 1155, 1161 (5th Cir. 1978). Considering the overall import of the instructions and interrogatories in this case, we conclude that the jury was properly charged in accordance with the applicable law and facts.

■ Following the mandates of *Perez v. Ford Motor Co.*, 497 F.2d 82, 86 (5th Cir. 1974), and the leading Louisiana Supreme Court decision of *Weber v. Fidelity & Casualty Ins. Co*, 259 La. 599, 250 So.2d 754, 755–756 (1971), the district court properly instructed the jury with respect to the doctrine of products liability under Louisiana law as follows:

"A manufacturer of a product which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who without fault on his part, sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated. However, the plaintiff claiming injury has the burden of proving the product was defective, i. e., unreasonably dangerous to normal use, and that plaintiff's injuries were caused by reason of the defect ... If the product is proven defective by reason of its hazard to normal use, the plaintiff need not prove any particular negligence

by the maker in its manufacture or processing; for the manufacturer is presumed to know of the vices in the things he makes, whether or not he has actual knowledge of them." *Weber, supra*, at 755–756.

*See Melancon v. Western Auto Supply Co.*, 628 F.2d 395, 398–399 (5th Cir. 1980); *Perez, supra*, at 86. Under the foregoing analysis, strict liability may be imposed whenever a product is defective by reason of its design or manufacture, or whenever it is unreasonably dangerous in normal use. To clarify the nomenclature, "unreasonably dangerous in normal use," the trial court specifically defined the key terms. "Normal use" was defined in accordance with Louisiana law, as the "foreseeable" or "intended" use of a product. *See generally* 25 Loyola L.Rev. 93, 98–100 (1979). A product was described as "unreasonably dangerous" if the hazards associated with its normal use are beyond those hazards contemplated by the ordinary user. *See Welch v. Outboard Marine Corp.*, 481 F.2d 252, 253–254, 256 (5th Cir. 1973). Alternatively, the court further instructed the jury that a product may be found unreasonably dangerous for the mere lack of a warning as to dangers of its normal use in certain conditions. *See Chappuis v. Sears, Roebuck & Co.*, 358 So.2d 926, 929 (La.1978).

■ It is apparent from a reading of the charge in its entirety that the issue of adequate warning was not the only ground for the finding of strict liability. Moreover, the charge did not overlook the doctrine of sophisticated purchaser, but in fact instructed the jury to consider the adequacy of the warning as to those who may be reasonably expected to use, or come in contact with, the product in its intended marketing chain. The trial court specifically included Byrd, as well as Hunt Tool, in this consideration.[1]

Pulmosan's final contention is that the verdict reached is inconsistent with the facts and law. They assert that no evidence was adduced at trial tending to show

1. *See Record*, Vol. 7 at 590, lines 6–15. In general, under Louisiana law, a manufacturer's duty to warn is precluded in situations when

the purchaser has particular knowledge of or experience with the inherent dangers in the use of a product, or in instances when the purchas-

a defect in the design or manufacture of the hood, and further, that the evidence mitigated towards a conclusion that the hood was not "unreasonably dangerous" in its proper use, which was light sandblasting. Consequently, Pulmosan avers, the finding of "unreasonably dangerous" must be predicated solely on the issue of adequate warning, and because they had no duty to warn Byrd, the verdict reached was erroneous. We disagree.

Ample evidence was adduced to demonstrate that the hood used by Byrd was "unreasonably dangerous" in normal use, regardless of warning, and that it was defective in its design. Under the framework of *Weber* and *Perez* the jury had to first determine that the product was in normal use. The evidence conclusively established that the product was designed, advertised, labelled, and marketed as a sandblast hood. As a consequence, it was not only foreseeable, but intended, that the hood would be used for sandblasting. Pulmosan contended that the hood could be safely used with a particulate removing respirator; however, tests made at Pulmosan's request [2] unequivocally established that the hood was unsafe even with a particulate removing respirator.[3]

From the foregoing, it is apparent that the issue of adequate warning was not the sole foundation of liability in the instant case, but merely an alternative means of determining that a product is unreasonably dangerous. Sufficient evidence was presented for the jury to conclude that the hood was defective or unreasonably dangerous, regardless of the issue of warning. Therefore, it is not necessary for this court to consider the duty to warn and the doctrine of sophisticated purchaser, since *Weber* and *Perez* have extended the doctrine of strict liability to any person, purchaser or foreseeable user.

When reviewing jury verdicts, this court must give deference to the jury's findings. Reversible error appears only when there is an insufficient evidentiary basis to support the verdict. *See Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). In the present case, this court finds that the verdict is supported by the applicable law and facts. Accordingly, we affirm the trial court's determination of liability and damages.

Federal courts are required to apply state law with regard to the award of

---

er has designed and requested a product for a particular application. *See, e, g., Bradco Oil & Gas Co. v. Youngstown Sheet and Tube, Co.*, 532 F.2d 501, 504 (5th Cir. 1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 111, 51 L.Ed.2d 542 (1977) (Bradco selected and specified type of pipe to be used in drilling operation); *Thibodaux v. McWane Cast Iron Pipe Co.*, 381 F.2d 491, 495, 497 (5th Cir. 1967) (city civil engineers specified pipe to be used for natural gas lines in corrosive soil); *West v. Hydro-Test, Inc.*, 196 So.2d 598, 605–606 (La.App.1967) (experienced workmen used product without taking precautions, no duty to warn—action in negligence, not products liability). These cases hold that a manufacturer need not warn a sophisticated user of a danger of which the user should be aware. To the extent that *West* suggests that the duty to warn does not extend beyond the purchaser, it is prior to and contrary to the leading Louisiana Supreme Court decision in *Weber v. Fidelity & Casualty Ins. Co.*, 259 La. 599, 250 So.2d 754 (La.1971), and is, therefore, not controlling. In *Walter v. Valley*, 363 So.2d 1266, 1270 (La.App.1978), the court found that there was no duty to warn of unforeseeable misuse of professional tools. Unlike *Walter*, the present case did not involve

misuse, but concerned the foreseeable and intended use of a product by a foreseeable user. Also, there was sufficient evidence to establish that Hunt Tool and Willy Byrd did not possess the level of expertise and knowledge to become sophisticated purchaser and user as to sandblast equipment.

2. Dr. Hammad, an industrial hygienist, conducted tests of the H–30–G hood at Pulmosan's request. The results demonstrated that the hood alone offered no respiratory protection because of the high concentrations of silica dust. Additionally, the results established that the hood could not safely be used in conjunction with a particulate removing respirator, and even with one operating at a 99% peak efficiency, a worker would still be subject to dangerous amounts of silica dust.

3. It is also pertinent to note that the American National Standards Institute for Respiratory Protection (ANSI), for the years 1959 and 1969, expressly prohibit the use of particulate removing respirators in any sandblasting operation involving sand as the abrasive substance.

legal interest in diversity cases. *Plantation Key Developers, Inc. v. Colonial Mortg. Co., Inc.,* 589 F.2d 164, 170 (5th Cir. 1979); *Texaco v. Lirette,* 410 F.2d 1064, 1067 (5th Cir. 1969); *see Klaxon v. Stentor Elect. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Louisiana law provides that interest shall run from the date of judicial demand, that is, from the date the complaint is filed. *See Lirette, supra* at 1067; *cf. Wright Root Beer Co. v. Dr. Pepper, Co.,* 414 F.2d 887, 892 (5th Cir. 1969). *See generally,* 13 L.S.A.–R.S. Art. 4203. Finding error in the district court's award of interest from the date of judgment, we direct that the judgment be amended to allow interest from the date of judicial demand.

AFFIRMED as AMENDED.

### ON PETITION FOR REHEARING
(opinion May 1, 1981, 5th Cir. 1981, Slip Op. 6590)

Before CHARLES CLARK and GEE, Circuit Judges, and SPEARS *, District Judge.

PER CURIAM:

■ In its petition for rehearing, Pulmosan argues that this Court erred when it amended the judgment to allow interest from the date of judicial demand. In this connection, Pulmosan correctly states that Byrd's challenge with respect to the date fixed by the trial court for the commencement of interest came in a motion to remand, rather than in a cross-appeal; however, under the circumstances of this case, it makes no difference.

■ This appeal is from a final judgment, and interest from the date of judicial demand (October 17, 1977) is mandated by Louisiana law. *Texaco v. Lirette,* 410 F.2d 1064, 1067 (5th Cir. 1969); L.S.A.–R.S. 13:4203.

The motion to remand was filed on August 1, 1980, which was well within one year after the judgment was entered on December 20, 1979, and we have treated the error in fixing the date of the judgment for the commencement of interest as a mistake, within the meaning of Rule 60(b)(1), F.R. Civ.P.

No useful purpose could have been served by remanding this case. On the contrary, wise judicial administration dictated that we deal finally with the appeal now. *Cf. Hamilton v. Stillwell Van and Storage Co.,* 343 F.2d 453, 455 (3d Cir. 1965); *Crosby v. Pacific S.S. Lines,* 133 F.2d 470, 473–474 (9th Cir.), *cert. denied,* 319 U.S. 752, 63 S.Ct. 1166, 87 L.Ed. 1706 (1943). *See also Huey v. Teledyne, Inc.,* 608 F.2d 1234, 1236–37 (9th Cir. 1979).

Finding no merit in either of Pulmosan's two points of error, the petition for rehearing is DENIED.

---

* District Judge, of the Western District of Texas, sitting by designation.