316 So.2d 140 (1975)
Calvin R. FARMER, Plaintiff-Appellant,
v.
FORD MOTOR COMPANY et al., Defendants-Appellees.
No. 12641.
Court of Appeal of Louisiana, Second Circuit.
July 1, 1975.
*141 Hal V. Lyons, Shreveport, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley by James B. Gardner, Shreveport, for defendants-appellees.
Before BOLIN, DENNIS and MORRIS, JJ.
BOLIN, Judge.
Calvin R. Farmer sues for damages for personal injuries, cost of repairing his automobile and related special expenses, allegedly caused by a faulty rear axle on his Ford automobile breaking, which in turn caused Farmer to lose control of and wreck the car. Made defendants were Ford Motor Company, manufacturer of the vehicle; Insurance Company of North America, Ford's liability insurer; and Shreveport Auto Finance Corporation from whom Farmer purchased the used Ford.
The demands against Shreveport Auto Finance Corporation were dismissed under an exception of no cause of action and this ruling has become final. For written reasons the trial judge found there was not sufficient evidence to prove a defect existed in the axle at the time of the original sale of the automobile by Ford Motor Company. He further found the doctrine of res ipsa loquitur inapplicable. From a judgment rejecting Farmer's demands he appeals and we affirm the judgment of the lower court.
The Ford automobile was originally sold on September 18, 1970, to Auto-for-Rent, Inc. Repairs were made to the car under Ford's warranty provisions on July 20, 1971, at which time the car was still owned by Auto-for-Rent and had been driven 8,333 miles. On February 2, 1972, Farmer purchased the car from Shreveport Auto Finance Company and had some repair work done on March 3, 1972, at which time the speedometer registered 12,874. None of the repairs performed under the warranty agreement involved the rear axle or wheels. At the time of the accident on July 7, 1972, the speedometer registered 17,977 miles.
The evidentiary doctrine of res ipsa loquitur is not applicable to the facts of this case for a number of reasons, principally because the manufacturer, Ford, had not been in possession of the automobile involved in the wreck for almost two years while it was owned and possessed by others. Eversmeyer v. Chrysler Corporation, 192 So.2d 845 (La.App. 4 Cir. 1966).
The primary issue on appeal is whether plaintiff proved the accident and *142 resulting damages were caused by a defect in the Ford automobile for which Ford Motor Company, as its manufacturer, may be held liable.
Plaintiff's case is predicated principally upon the testimony of Farmer, which is essentially as follows. He, his wife and two children were on a vacation camping trip in the vicinity of Lake Greeson, Arkansas. Farmer, accompanied by his four-year-old grandson, had driven his automobile to a nearby welding shop and while returning to the campsite the accident made the basis of this suit occurred. While traveling in a southerly direction on U.S. Highway No. 70 at a speed of approximately 50-55 miles per hour, he heard a "pop" followed by a "glimpse of something" to his right. He attempted to stop his car but his brakes failed and he began "fighting" to keep the automobile on the road. The car finally came to a stop several hundred feet away in a ditch on the right side of the highway. Immediately after the accident Farmer and his grandson returned to the campsite and Farmer went back with his family to the scene of the accident about half an hour later. Upon arriving at the scene he inspected his vehicle and talked to several people, including a state trooper who was in the process of making an accident report. He saw a wrecker remove his car and at this time noticed the right rear wheel of his Ford lying to the right rear of his automobile in some bushes. Noticing the wheel he surmised this was the object he noticed passing to his right immediately after he heard the "pop". Farmer said his automobile was removed to the Friendly Ford Sales in nearby Glenwood, Arkansas, on the day following the accident. He went to the Friendly Ford establishment and examined the rear axle and noted a "bright" and a "dark" portion on the axle. The dark portion he attributed to a prior existing crack. Farmer said he gave all the parts, including the axle, to David Roussel at Wray Ford in Shreveport, Louisiana.
In addition to his own testimony Farmer called several other witnesses. Ralph Nelson, plaintiff's son-in-law who was on the camping trip with plaintiff, said he went to the scene of the accident before the wrecked car was moved. He described the location of the car, possible skid or scrape marks, and other visible evidence at the scene. Nelson went with Farmer to Friendly Ford the day following the accident and a mechanic showed him the axle in question. He said he noticed where the axle was broken but because it was dirty and greasy he could not see any difference in the color in the vicinity of the break.
Testifying for Farmer were his son, Gary Farmer, and a friend, Jerry Neal. These witnesses arrived at the scene approximately half an hour after it occurred and testified as to what they described as "skid marks or scrape marks" for approximately ten feet on the highway and on the shoulder in the vicinity of the accident. We do not consider their testimony to be of any aid in resolving the question of whether the accident was caused by a defective rear axle.
During trial the only witness testifying for defendant was James Scott, an employee of Ford Motor Company, who was accepted as an expert in the field of automotive engineering and design. Based upon his examination of the file, the various parts of plaintiff's automobile, including the rear axle, plus the result of a Rockwell hardness test, Scott concluded the axle broke as a result of a lateral impact rather than from a fatigue-type fracture. The Rockwell test is performed by using a machine which indicates on a scale the hardness of the metal being tested. This test was used by Ford Motor Company to determine if metal in the axle shaft met the specifications of the company's quality control requirements for hardness of the metal. The axle which plaintiff claims was defective in the instant case was subjected to this test and was found to be of *143 sufficient hardness to meet the standards of Ford. Scott concluded there was no indication of any defect or fatigue in the metal but the axle was fractured from an impact resulting from the automobile leaving the road and running into the ditch.
Defendants also filed the depositions of David R. Roussel of Wray Ford, the state trooper who investigated the accident, and three employees of Friendly Ford. We deem it unnecessary to discuss the testimony of these witnesses since none of them testified favorably to plaintiff's theory that the accident was caused by a defective rear axle.
Plaintiff's case against Ford Motor Company and its liability insurer must fall because he failed to prove by a preponderance of evidence that the automobile he was driving possessed a defective rear axle which broke due to faulty construction by Ford. Wishom v. Ford Motor Company, 256 So.2d 298 (La.App. 1st Cir. 1971).
Simon v. Ford Motor Company, 282 So. 2d 126 (La.1973), was a damage suit arising out of an automobile accident caused by the failure of the steering mechanism. The court rejected plaintiff's claim against Ford, with Justice Dixon as author of the majority opinion stating:
"Because the record is void of any proof of the cause of the failure in the ball joint assembly, plaintiff Simon cannot prevail against Ford Motor Company, Hub City Motors, Inc., Hardware Mutual Casualty Company, Mcllwain Motor Company, Inc., or Bituminous Casualty Corporation."
On rehearing the court reinstated the above holding as to Ford, with Justice Tate stating:
"In short, while if properly lubricated at proper intervals with the proper type of lubricant, the ball joint may well last the life of the car in the absence of rough use, nevertheless a number of factors beyond the manufacturer's control can cause a shortened life of the ball joint. In the present instance, Ford had manufactured the automobile in 1962 and the ball joint assembly did not collapse until 1968, during which interval lack of lubrication or other owner misuse were more likely causes of the failure of the ball joint than any initial defect. We adhere to our initial determination that fault on the part of Ford is not proved by a preponderance of the evidence before us and that therefore the trial and intermediate courts correctly dismissed the suit against this manufacturer."
In view of the pronouncements of the law stated herein, together with our appreciation of the facts, we agree with the following conclusion reached by the trial court:
"There is no expert evidence in this case that demonstrates that the axle was defective at the time of the accident. The testimony of Mr. Farmer as to the facts of the accident, standing alone, is simply not sufficient for the Court to conclude that there was a defect in the axle that existed at the time of the original sale by Ford Motor Company to the original owner, Auto-for-Rent, on September 18, 1970. The type of treatment the automobile received when it was owned by the former owners is not known."
For the reasons assigned the judgment of the lower court is affirmed at appellant's cost.