341 So.2d 605 (1977)
W. L. HOFFOSS, Plaintiff-Appellant,
v.
RALSTON PURINA COMPANY et al., Defendants-Appellees.
No. 13107.
Court of Appeal of Louisiana, Second Circuit.
January 10, 1977.
Drew, White, Drew & Drew by Robert C. White, Minden, for plaintiff-appellant.
*606 Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, Kitchens, Benton & Kitchens by Graydon K. Kitchens, Jr., Minden, for defendants-appellees.
Before BOLIN, PRICE and MARVIN, JJ.
BOLIN, Judge.
Several of plaintiff's cows died after eating a high energy cattle feed sold to plaintiff by defendant retailer. Plaintiff sued both the retailer and the manufacturer of the feed for the value of the dead cattle. The retailer reconvened for the unpaid purchase price of the feed. The trial court rejected plaintiff's demands without mentioning the reconventional demand. Plaintiff appeals and the retailer answers the appeal seeking an award under its reconventional demand. After the appeal was lodged in this court plaintiff died and the administratrix of his estate has been substituted as appellant. We affirm the judgment rejecting plaintiff's demand but award the retailer judgment against the plaintiff for the amount due for purchase of the feed.
It being conceded the feed was not defective, the primary question is whether defendants warned plaintiff that it could be harmful to his cattle unless proper feeding procedures were followed.
The general rule is that retailers and manufacturers of potentially dangerous products have a duty to give adequate warning to purchasers of the possible danger involved in using that product. H. Williams v. Allied Chemical Corporation, 270 So.2d 157 (La.App. 1st Cir., 1972).
Plaintiff had been raising cattle for six years and had two years of college education in agricultural vocation. He purchased 6000 pounds of "Cattle Complete", a high energy feed, from Cone's Farm & Garden Mart, Inc. This feed is manufactured by Ralston Purina. Upon delivery of the feed plaintiff loaded it into a feeder and put it into a pasture containing 25 or 30 of his cattle. Within a short time the cattle became sick. Two veterinarians were called but by the next day several of the cows had died.
Two veterinarians testifying for plaintiff were of the opinion that the cause of the cattle's death was their too rapid ingestion of the high energy feed. These experts stated that cows which have been on hay or grass should not be suddenly introduced to this type of feed and allowed to eat without supervision.
Plaintiff testified he received no warning as to the danger of giving his cattle free access to the feed. He admitted that at the time his cattle were stricken he knew generally that if he changed the cows' feed he should do so gradually to condition their digestive systems. The plaintiff also ran a restaurant, and he stated he did not have time to regulate the feed eaten by his cattle.
Mr. Miller, a neighbor of plaintiff who had raised steers for 50 years, stated that in the past he had talked with plaintiff about the proper method to break in cattle on new feed and that this knowledge should be common to anyone who had raised cattle for six years.
Mr. Cone, Sr., admitted he had not instructed plaintiff as to the proper feeding method at the time of the sale but contended he had explained to him the correct feeding procedures several times over the past few years.
Mr. Cone, Jr., testified he discussed with plaintiff the proper method of utilizing "Cattle Complete" at the time of the sale. He said he also explained to plaintiff at his farm on the day of delivery that if the cattle were given free access to the feed they would become sick. He suggested that plaintiff put the feeder in the corral to limit better the cattle's access to the feed, but the plaintiff chose to ignore his suggestion.
We find the trial judge was correct in adopting the Cones' version of the facts and in finding that plaintiff was adequately warned of the danger involved in allowing cows free access to high energy cattle feed without gradually conditioning their systems.
*607 The Cone company, by its answer to the appeal, properly put at issue its reconventional demand. Louisiana Code of Civil Procedure Article 2133 provides "an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court."
It is uncontroverted that 6132 pounds of "Cattle Complete" ordered by plaintiff was delivered to his farm on January 29. Mr. Cone testified he returned to plaintiff's farm and picked up 740 pounds of the feed on April 14. The ledger sheet showed plaintiff was charged $372.52 for the delivered feed and that he was given credit for $44.96, representing the 740 pounds picked up by Cone. The balance of the account is presently due and unpaid.
The judgment is amended to substitute the administratrix of plaintiff's estate as party plaintiff, and to grant judgment in favor of Cone's Farm & Garden Mart, Inc., against plaintiff for $327.56 plus interest from date of judicial demand. As thus amended the judgment is affirmed at appellant's cost.