362 So.2d 816 (1978)
Charles GUILYOT
v.
DEL-GULF SUPPLY, INC. and Aluminum Specialty Co., Inc.
No. 9258.
Court of Appeal of Louisiana, Fourth Circuit.
August 21, 1978.
Rehearing Denied October 12, 1978.
*817 George W. Reese, New Orleans, for plaintiff.
Stanley E. Loeb, New Orleans, for Del-Gulf Supply, Inc.
Jamie F. Veverica, New Orleans, for Aluminum Specialty Co., Inc.
Thomas J. Wagner, New Orleans, for T. Smith & Son Inc. and Employers National Insurance Co.
Rudolph R. Schoemann, New Orleans, for Oscar J. Autin Insurance Agency, Inc.
Before SAMUEL, REDMANN and STOULIG, JJ.
REDMANN, Judge.
Defendant pipe-hook manufacturer appeals from a judgment on jury verdict holding it liable for plaintiff's serious injuries from a 7,000-pound pipe which rolled into him when mislaid by a crane diagonally rather that parallel atop other pipes in tiers on a barge. Defendant's pipe-hooks did not break, slip out while carrying pipe, or otherwise perform contrary to their design. They merely did not detain the pipe after it was let down.
Plaintiff's theory is that the pipe-hooks' design was defective for lack of either a clamp or a long extension into the pipe to prevent the hook's dislodgement upon release of the pressure from the weight of the pipe.
Lack of some retaining device is doubtless a "cause-in-fact" (a sine qua non, a "but for" factor) of the accident; Straley v. Calongne Drayage & S. Inc., La. 1977, 346 So.2d 171. And plaintiff shows that such devices are used on two other kinds of pipe-hooks, thus showing that the manufacturer could by different design have avoided the accident, as was shown in Gauthier v. Sperry Rand, Inc., La.App. 3 Cir. 1971, 252 So.2d 129, writ refused 259 La. 940, 253 La. 382, and in Leathem v. Moore, La.App. 1 Cir. 1972, 265 So.2d 270; see also Clark v. Sears, Roebuck & Co., La.App. 3 Cir. 1971, 254 So.2d 62. But, as in Gauthier and Leathem, plaintiff does not show that defendant's "fault", La.C.C. 2315, caused the accident by breach of some duty owed to plaintiff not to design the hook for easy rather than difficult removal. We therefore reverse.

Facts
Plaintiff was a member of a crew moving 36-inch diameter, 40-foot long, 7,000 pound pipes from a ship into a barge by use of a floating crane positioned between those two vessels. The pipes were placed in the barge so as to first cover its floor with three or four pipes end-to-end along its length by perhaps 20 pipes side-to-side across its width (a total of perhaps 60 or 80 pipes). Thereafter a second layer of pipes was to be placed atop that bottom layer, in a similar orientation except that each new row of side-by-side pipes would contain one less pipe than the row atop which it lay. Thus, after a first-layer row of 20 pipes, the rows in the succeeding layers would contain 19, then 18, then 17 pipes, with the pipes in each new layer resting side by side in the grooves constituted by the top halves of the pipes in the previous layer.
Each pipe was moved by the crane from ship to barge by means of two cables, each attached to a pipe-hook which held up one end of the pipe. The crane was using five pairs of cables and hooks to move five pipes at a time.
After one or two layers of pipe had been stacked in the barge, the crane brought other pipe to be stacked but aligned it at a 45-degree angle rather than parallel to the already-stacked pipe. When the crane operator let the new pipe down upon the stacked pipe, one hook holding one end of one pipe came out (as it is designed to do with ease on release from the weight of the pipe) and the pipe rolled at its 45-degree angle along the tops of the stacked pipe into plaintiff.
(That five pipes were brought by the crane when only four grooves remained in the layer being stacked seems irrelevant. As we appreciate the facts, even if a single pipe were so placed across the stacked pipe and the hooks, relieved of the weight, had *818 come out, the single pipe would similarly have rolled catercorner across the stacked pipe: the pipe did not roll because there was no groove for it [each new layer of pipe forms new grooves, and if too many pipes are brought in a single load the load is "split" and the extra pipe stacked in the newly made grooves]. The pipe rolled because it was across rather than parallel to the grooves formed by the stacked pipe, and perhaps because the barge was not perfectly level because of the as yet uneven distribution of its very heavy load.)

Liability
Categorizations like "products liability", "executive officer liability", "medical malpractice" and so forth are helpful as catch-phrase aids to memory, as on burden of proof, but all tort liability in Louisiana arises exclusively from the delictual principles of the Louisiana Civil Code, Bk. 3, tit. 5, ch. 2, "Of Offenses and Quasi Offenses" (arts. 2315-2324); Ardoin v. Hartford Accident & Indem. Co., La.1978, 360 So.2d 1331. The basic principles are that one is liable for damage caused by his fault, C.C. 2315, [including negligence, imprudence and want of skill, art. 2316, and more, Langlois v. Allied Chem. Corp., 1971, 258 La. 1067, 249 So.2d 133] and "for that which is caused by the act of persons [including minor children, art. 2318, insane wards, art. 2319, and employees, art. 2320] for whom we are answerable, or of the thing [including animals, art. 2321, and buildings, art. 2322] which we have in our custody", art. 2317.
Plaintiff thus describes the pipehook manufacturer's employees' fault:
due to the fact that the locations where these pipes eventually are stowed are not always level, the two [other] types of pipe hooks described . . . had the additional safety factor of either a long extension arm into the pipe or a safety catch to prevent the hook from falling out when tension was relieved to keep the pipe from doing exactly what happened in this case, i. e. rolling out of control without a pipe hook still in the pipe to prevent this uncontrolled action. . . . Appellee [plaintiff] believes that the hook in question was designed for use by pipe line companies . . . in their operations in oil fields and off-shore drilling situations and the appellant's fault basically consists of manufacturing and putting into commerce this hook which was improperly designed for general use on water fronts . . . .
We have agreed that absence of a retaining device was a "cause-in-fact", but we disagree that that absence constitutes a design defect, an act of fault, or otherwise makes the manufacturer liable.
Also a "cause-in-fact" of the accident was the pipe's being round: had it been square, it could not have rolled into plaintiff. Nevertheless we do not deem round pipe defectively designed, and the pipe manufacturer is not at fault because the pipe is round, and the manufacturer is not liable for injuries like plaintiff's because the pipe is round. Roundness of pipe is a desirable quality for many reasons, one of which may be that it does facilitate rolling.
As in the case of roundness of pipe, we can not deem ease of removal of a pipehook a defect in its design: it is a desirable quality in some uses, especially for tierstacking of pipes so high that workers would have to climb upon the pipes to release a hook that was not easy to remove. The easily-removed-hook design eliminates the risks of climbing on stacked pipes. (Could a worker injured in such a climb recover from a clamping-type hook manufacturer on the theory that that hook was defectively designed because it lacked the ease of removal which our hook has?)
Design choices are affected by many considerations. A design choice may be wholly faultless although it permits even obvious risks, if it does so to serve a legitimate purpose. A knife must be designed with a sharp edge precisely so that it will cut; despite the risk that sharpness presents to the user of the knife, sharpness is not a design defect in a knife and the manufacturer cannot be faulted for electing sharpness rather than the safety that dullness would promote.
Wade, On the Nature of Strict Tort Liability for Products, 1973, 44 Miss. L.J. 825, *819 835, suggests that the test of whether a product's design is "unreasonably dangerous" is "whether the magnitude of the risk created by the dangerous condition of the product was outweighed by the social utility attained by putting it out in this fashion."[1] Robinson, Manufacturers' Liability for Defective Products in Louisiana Law, 1975, 50 Tulane L.Rev. 50, 65-66, deduces from Louisiana cases
that, like the common law states, the Louisiana courts will demand proof approaching a showing of negligence in cases involving allegations of defective design. Allegations of a defect in the design of a product, unlike claims that a product is defectively manufactured, involve indictment of conscious manufacturer choice, and it is not surprising that the courts are more reluctant to find liability on the basis of such choice.
Because ease of removal of pipehooks serves the legitimate purpose of avoiding risks inherent in freeing a pipehook with a retaining device, and (insofar as the record shows) that purpose cannot be accomplished by a design incorporating the retaining devices plaintiff contends it was fault to omit, and the risks permitted are not shown to be unreasonably disproportionate to the risks avoided (and other benefits attained) by the design, defendant manufacturer's design (or manufacture or distribution) does not constitute fault, and breaches no duty, towards prospective users or third persons. Defendantlike the manufacturer of the round pipe which rolled into plaintiffis therefore not liable to plaintiff.
Reversed at plaintiff's cost.
NOTES
[1] See Henderson, Judicial Review of Manufacturers' Conscious Design Choices: The Limits of Adjudication, 1973, 73 Columbia L.Rev. 1531, for the view that "Courts are inherently unsuited to the task of establishing product safety standards in cases involving the liability of manufacturers." Henderson is criticized by Twerski, Weinstein, Donaher and Piehler, The Use and Abuse of Warnings in Products Liability Design Defect Litigation Comes of Age, 1976, 61 Cornell L.Rev. 495; Henderson responds in Design Defect Litigation Revisited, 1976, 61 Cornell L.Rev. 541.