365 So.2d 898 (1978)
Elmo DANIELS
v.
ALBACH COMPANY, INC.
No. 9593.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1978.
*899 Smith, Walters & Gray, Lloyd R. Walters, Slidell, for plaintiff-appellant.
Christovich & Kearney, C. Edgar Cloutier, New Orleans, for defendant-appellee.
Before SAMUEL, LEMMON and GARRISON, JJ.
GARRISON, Judge.
On March 28, 1973, plaintiff, Elmo Daniels, was employed by Bagwell Coatings, Inc. as a painter working at the Tenneco Refinery in Chalmette. The work was being done by using an air powered workbasket which was moved up and down the furnace stacks. There was one permanent rigging attached to the stack.
To facilitate the work the Tenneco maintenance engineer, George McLean, requested that another basket be used. The Bagwell foreman, Dwayne Mulvaney, said that it would be necessary to send to Baton Rouge for a suitable stack hook from which to "rig" the workbasket. Mr. McLean suggested it might be quicker to have a hook fabricated locally. Mr. Mulvaney accordingly drew a sketch of the hook and examined the stack to determine the proper dimensions. Such hooks are usually made of 1-11/8 inch cold rolled steel. Mr. Mulvaney testified that McLean took the sketch to Tenneco's engineers who drew plans of it, including a three dimensional view. Mr. McLean testified that he then brought Mulvaney's sketch to Albach for fabrication. In any case there was no indication on either sketch of the intended use of the hook.
*900 The Albach Company fabricated the hook according to the sketch. The only variation from the design was that they used 1¼ inch cold rolled bar steel since they had no 11/8 inch in stock. The hook was not tested because Albach does not perform tests on their fabrications unless the customer so requests. There were no requirements in the design as to the load bearing capacity of the hook. Albach has fabricated similar hooks, but they had no idea of the intended use of this particular one.
The hook appeared to be very well made and was in accord with the specifications. However, after 1 to 3 days of use it broke cleanly causing plaintiff's workbasket to fall. Mr. Daniels was left suspended from his independent safety line. The cable holding the basket wrapped around his neck causing scarring and bruises.
Plaintiff filed suit against the Albach Company and the case was heard on December 22, 1977. On February 13, 1978 the trial court rendered judgment in favor of defendant, dismissing the suit. Plaintiff has appealed.
"Products liability" is . . . "helpful as a catch-phrase aid[s] to memory, as on burden of proof, but all tort liability in Louisiana arises exclusively from . . . [Article 2315] of the Louisiana Civil Code. . ." Guilyot v. Del-Gulf Supply, Inc., 362 So.2d 816, 818 (La.App. 4th Cir. 1978), citing, Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978); see also Atchison v. Archer-Daniels-Midland Co., 360 So.2d 599 (La.App. 4th Cir. 1978).
Under the classic Louisiana "fault" doctrine of La. Art. C.C. 2315 plaintiff's case must fail. Plaintiff did not show that defendant acted unreasonably in the fabrication of the hook. To the contrary, plaintiff established that the hook was made to design specifications and in fact was "very well-built."
But even if one were to apply the jurisprudential rules of products liability plaintiff would not prevail. To be successful plaintiff must prove: 1. a defect in the product; 2. that at the time of its failure it was in normal use; 3. that it was unreasonably dangerous in that use; and 4. that the injuries were caused by the defect. Davis v. Reliance Elec. Co., 351 So.2d 1238 (La.App. 1st Cir. 1977); w. d. 353 So.2d 1334, 1335; Dixon v. Gutnecht, 339 So.2d 1285 (La.App. 1st Cir. 1976), w. d. 342 So.2d 673.
A product is defective and unreasonably dangerous when a reasonable seller would not sell the product if he knew of the risks involved or if the risks are greater than a reasonable buyer would expect. Welch v. Outboard Marine Corp., 481 F.2d 252 (5th Cir. 1973); Foster v. Marshall, 341 So.2d 1354 (La.App. 2d Cir. 1977), w. r. 343 So.2d 1067 and 343 So.2d 1077. In the case at bar plaintiff did not show that the defendant knew the intended use of the hook, therefore he could not know of the risks involved. It was reasonable for the defendant to rely on the designer-buyer to specify a hook suitable to his own purposes.
It has been stated that "the essence of Louisiana's strict liability against manufacturers or sellers of products with latent defects is that the purchaser or consumer relied on the representations of the manufacturer or seller that the product was safe for its intended use, and that the danger inherent in the product was within the manufacturer's or seller's power to prevent" (emphasis added). Heirs of Fruge v. Blood Services, 506 F.2d 841 (5th Cir. 1975); at 847; citing Weber v. Fidelity & Casualty Ins. Co., 259 La. 599, 250 So.2d 754 (1971). If Albach fabricated the hook exactly to specifications (and there is no proof to the contrary) then it was not within its power to prevent the danger inherent in the product.
Finally, although it is obvious that the hook fabricated by Albach failed, the cause of the failure was not established. It was shown that the design specifications were met (and even improved upon). However, there is no proof that the steel or the fabrication process was faulty. It is possible that the design or specifications presented to Albach were inadequate. In any event, the trial judge must be regarded as having *901 determined that the plaintiff did not prove that Albach's fabrication was the cause of the accident.
Based upon the record this conclusion is not manifestly erroneous and should not be disturbed on appeal. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
AFFIRMED.