SEXTON, Judge.
This is an appeal in a products liability case in which the trial court found that the plaintiffs, Robert A. Canty, A. C. Haulcy, and Howard Brown had failed to carry their burden of proving that a defect existed in the brake system of a 1976 Dodge truck manufactured by the defendant, Chrysler Corporation. We affirm.
On September 10, 1977, Robert A. Canty while operating the 1976 Dodge truck with a 17-foot Crestliner boat and trailer in tow, failed to stop at the intersection of Lincoln Parish Highway 26 and Louisiana Highway 554. The truck traveled through the “T” shaped intersection, collided with a tree and burst into flames. The driver and the two guest passengers (Brown and Haulcy) were all injured. The truck, trailer and boat, as well as all the personal property contained therein, were destroyed in the conflagration. Brown was the most severely injured and was taken to Lincoln General Hospital by a passing motorist. Canty and Haulcy remained on the scene and were questioned by Trooper Gregory C. Gossler of the Louisiana State Police as to the cause of the accident. Canty stated that the brakes failed, thus rendering it impossible for him to stop the vehicle. Trooper Gossler however testified that the brakes were operative. He based this determination on a complete set of skid marks found at the scene of the accident.
Howard Brown and A. C. Haulcy each filed a separate suit against the driver-owner of the truck, Robert A. Canty, and the manufacturer of the truck, Chrysler Motor Corporation, Dodge Truck Division. Mr. Haulcy also named as defendant Fireman’s Fund Insurance Company alleging that Robert A. Canty was an uninsured motorist and as such under the terms of Mr. Haulcy’s contract of insurance with the insurer, Fireman’s Fund Insurance Company (Fireman’s) is liable ex contractu for damages occasioned by the uninsured motorist. Howard Brown also named his insurer, Aet-na Life and Casualty Insurance Company (Aetna), based on the uninsured motorist provisions of the policy of insurance issued to him by Aetna. These claims against the two insurers were settled prior to trial. In each of these suits, the defendant, Canty, filed a Third Party Demand against the manufacturer of the vehicle, Chrysler Motor Corporation, Dodge Truck Division. Robert Canty, in a separate suit named as defendant, Chrysler Motor Corporation, Dodge Truck Division, asserting liability due to the alleged faulty brake system. These cases were consolidated and heard by the trial court which ultimately rendered judgment for A. C. Haulcy and Howard Brown against Robert A. Canty. All claims against Chrysler Motor Corporation were dismissed.
*324 Howard Brown, A. C. Haulcy and Robert A. Canty all appeal the trial court’s dismissal of their claim against the defendant, Chrysler. The quantum of the' damages awarded to the plaintiffs Brown and Haul-cy are not contested on appeal. Haulcy and Brown allege that the court erred in the burden of proof it required the plaintiffs to bear with regard to the issue of the defective brake system, and also that the court erred in giving more weight to the testimony of expert witnesses than to the “uncon-tradicted” testimony of the parties. The plaintiff-appellant Canty alleges as his sole specification of error the trial court’s acceptance of expert testimony over that of the plaintiff who was an “eyewitness.”
All appellants contend that their testimony at the trial was uncontradicted and therefore was conclusive as to the determination of the facts. However, we find, as did the trial court, that the testimony of the plaintiff, Robert Canty, was contradicted on the all-important issue of whether the brakes were operative. Canty testified that at a distance of approximately 100 yards from the intersection he applied his brakes and got no response from them. Trooper Gossler of the Louisiana State Police testified that he found two sets of skid marks 24 feet and 18 feet in length near the intersection where the accident occurred. He testified that these skid marks were made by the front and rear tires of the Canty vehicle, and that the existence of such marks were indicative of a functioning brake system. In answer to questions posed to him on direct examination Canty testified as follows:
“Q. Okay. Now, did you ever — did the brakes ever work to your knowledge?
A. To my knowledge I didn’t think they ever did catch.
Q. Do you have information from somebody else that they might have caught?
A. Well, going back and checking and Trooper Gossler testified that they did catch but at that time, I didn’t think they did at all.”
Thus the plaintiff’s evaluation of what happened was contrary to the physical evidence found at the scene and was further contradicted by the trooper who testified as to the significance of the skid marks. Further contradiction of the plaintiff-appellant’s version of the accident was supplied by expert witnesses for plaintiff and defendant who testified on the subject of the design and operation of the brake system involved.
Plaintiff’s expert, Dr. John Calhoun, a professor of mechanical engineering at Louisiana Tech University was accepted as an expert in mechanical engineering but not as an expert in brake systems. Dr. Calhoun admitted his expertise was limited as follows:
“Q. You don’t hold yourself out to be a specialist in automotive braking systems do you?
A. No, I do not.
Q. With regard to the particular brake system on this pick up truck, do you have any detailed technical knowledge of the matter in which the system operates?
A. Well, I have a technical knowledge of the operation of the individual elements. As far as having participated in a design or a testing program of the elements of a Dodge pick-up truck, no.
Q. So you haven’t tested or had experience in testing any elements of the brake system of the Dodge pick-up truck?
A. I have not.
Q. Have you had any background in testing or evaluating the loss of vacuum, for example, in a power brake system?
A. Not as a formal test, I have experienced this as an individual on my own personal automobile and I’m aware of what the consequences were and since I do have some engineering analysis and training, I knew what the situation was and I would say I have evaluated it per *325 haps at least more than a lay person would have even though it was just in my personal operation.”
Dr. Calhoun’s evaluation of the accident and its possible causes were based entirely upon the statements of the plaintiff-driver. Dr. Calhoun testified that although he looked at the remains of the vehicle there was not enough of the brake assembly left intact to support a conclusion as to the cause of the collision. However, Dr. Calhoun did testify that in his opinion the booster system within the brake system had failed. He further stated that, due to the existence of the skid marks, the hydraulic brake system was functional. Therefore the loss of braking power allegedly experienced by the driver must have been due to a failure within the booster system. Testimony was further adduced from him to the effect that if the hydraulic system was intact (as Dr. Calhoun determined it was) then, even had the booster malfunctioned the driver could effectively stop the vehicle by increasing the pressure with which he applied the brake.
The defendant, Chrysler Motor Corporation, also supplied an expert witness, Mr. Jerry Boyd. Mr. Boyd is an employee of Chrysler and since 1962 has been engaged in developing and testing brake systems for the defendant’s products. In the course of his employment, Mr. Boyd testified that he had conducted extensive tests on systems similar to the one involved here. Mr. Boyd was accepted as an expert in the field of braking systems. Basically Mr. Boyd testified that there was enough of the braking system intact to rule out a mechanical blockage of the brake system. Mr. Boyd opined that the system was working properly at the time of the accident. He further testified that the plaintiff’s description of the accident was indicative of a “panic stop situation.” Mr. Boyd also agreed that the failure of a booster system would not cause the brakes to be non-operational but rather would merely make the brakes harder to apply. The vehicle could still be stopped in the event of a booster failure. However, Mr. Boyd found no evidence to support a finding that the booster system failed.
To be successful in a product liability claim such as the one presently before the court, the plaintiff must prove: (1) a defect in the product; (2) that at the time of its failure it was in normal use; (3) that it was unreasonably dangerous in that use; and (4) that the injuries were caused by the defect. Daniels v. Albach Company, Inc., 365 So.2d 898 (La.App. 4th Cir. 1978); Davis v. Reliance Elec. Co., 351 So.2d 1238 (La.App. 1st Cir. 1977), writ denied, 353 So.2d 1334 (La.1978); Dixon v. Gutnecht, 339 So.2d 1285 (La.App. 1st Cir. 1976), writ denied, 342 So.2d 673 (La.1977).
Here, the trial court determined that the plaintiffs had not met their burden of proving that a defect existed in the product. Without such a showing that a defect existed, the plaintiffs’ claims for damages must be dismissed. In Farmer v. Ford Motor Company, 316 So.2d 140 (La.App. 2d Cir. 1975), this court was faced with essentially the same factual circumstances presented in this appeal. In Farmer this court upheld the trial court’s determination that the plaintiff’s testimony as to what he experienced with regard to the malfunction of the vehicle’s rear axle was not sufficient to overcome contrary expert testimony. In the instant case the trial court was confronted with the testimony of the plaintiff-occupants of the truck, only one of whom actually operated the brake pedal, to the effect that the brakes failed. Contra to this testimony was the testimony of the expert witness supplied by the defendant who testified that after viewing the remains of the brake system and analyzing the plaintiffs’ testimony, there was no indication that the accident was caused by a design defect or a manufacturing defect. This testimony was corroborated by an independent witness, the state trooper.
The question put to the trial court was one of credibility of witnesses. In a well documented and well reasoned opinion the trial court found there was no showing of a defect and the most probable cause of the accident was driver negligence in failing to apply the brakes timely. The trial court stated:
*326 “The court must in this case as in every case weigh and consider all of the evidence and testimony in the case. At the time of the trial the court was not satisfied that the plaintiffs had discharged their burden of proof as against Chrysler Motor Corporation. In an effort to be sure that all of the evidence and testimony was properly weighed and considered, the court has read the complete record on two occasions and still is of the opinion that the plaintiffs have not demonstrated that it was more probable than not that there was in fact a brake failure on the Dodge Truck.”
The trial court further stated:
“The preponderance of the evidence is that the truck was near the intersection when the driver realized that it was going to be impossible for him to stop the truck. Had the driver started application of the brakes at the point and in the manner that he described it, the evidence is almost conclusive that the hydraulic brakes on the truck would have stopped the truck even with the load of the boat, trailer and passengers before it reached the intersection. This is assuming there was a power or vacuum failure. The preponderance of the evidence is that the accident resulted from the failure of the driver of the car to apply the brakes when he knew or should have known that he was approaching the intersection.”
(emphasis ours)
These conclusions are supported by the record. We do not find that the trial court’s holding is clearly erroneous. Without such a finding of manifest error the lower court will be affirmed. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the reasons assigned the trial court’s judgment is affirmed at appellants’ costs.
AFFIRMED.