Shelby BRIDGES, Plaintiff-Appellant,

v.

CHEMREX SPECIALTY COATINGS, INC., Defendant-Appellee.

No. 82–3191
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

May 2, 1983.

---

E. Gordon Schaefer, Jr., Metairie, La., for plaintiff-appellant.

Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Donald O. Collins, New Orleans, La., for defendant-appellee.

Before RUBIN, JOHNSON and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge.

This is a suit for damages brought by an injured worker against a product manufacturer. It falls in the diversity jurisdiction of the federal court, 28 U.S.C. § 1332. Shelby Bridges was a foreman for the S & S Equipment and Construction Co. in the New Orleans area. On December 23, 1977, he was supervising a job involving the pouring of concrete curbing. After the curbs were poured, a coworker sprayed the concrete with Chem-cure, a chemical compound that helps the concrete to cure properly. The Chem-cure was packed in fifty-five gallon drums, labeled with both a red warning label indicating flammability and a detailed white warning label. The white label gave warnings obviously meant to protect users from dangerous practices. For example, the warnings included: "Keep away from heat and open flame," "Close container after each use and use only with adequate ventilation," and "Keep out of the reach of children." [1]

S & S's normal procedure for handling Chem-cure was to have an S & S worker transfer the Chem-cure from a fifty-five gallon drum to a smaller pressurized tank to make the spraying easier, apply the product to the newly-formed concrete, and put the large drums alongside the road as they were emptied. An S & S crew would reclaim the drums at the end of the day for proper disposal. On December 23, two empty, unsealed drums were set aside at the job site. Bridges noticed later in the day that one of the drums had caught fire. He extinguished the fire with dirt and then walked up to the second drum which had also by then caught on fire. At that moment the Chem-cure fumes in the second drum exploded, causing him injury. The exact cause of the fire and subsequent explosion was never determined, although neighborhood children had been playing with firecrackers nearby and were suspected of earlier vandalism at this job site. The fire and explosion possibly were caused by a firecracker thrown into the open drum.

Bridges filed this products liability suit against Chemrex Specialty Coatings, Inc., the manufacturer of Chem-cure. He claimed first, that Chemrex was negligent in failing to warn of Chem-cure's propensity to explode, and second, that Chemrex should be held strictly liable for marketing the product in an unreasonably dangerous condition—namely, without a warning label regarding its explosive nature. The case was tried to a jury. On a submission by interrogatories under Fed.R.Civ.P. 49(a), the jury found no basis for an award of damages to the plaintiff in strict liability. But the jury could not reach agreement on the negligence interrogatory. The district judge entered judgment for the defendant on the strict liability claim and ordered a new trial on the negligence claim. The second trial, also before a jury, determined that defendant was not negligent. Judgment ultimately was entered for the defendant on all counts.

Bridges brings a timely appeal. He challenges certain jury instructions at the first

[1]. The label met the government requirements for warnings for flammable liquids.

trial, the existence of sufficient evidence to uphold the findings of the first and second juries, and the court's acceptance of a "partial" verdict by a "confused" jury at the first trial. We affirm the judgment for defendant, Chemrex.

## I. Jury Instructions

■ Bridges challenges a portion of the judge's charge to the jury, which read as follows:

A product is not unreasonably dangerous or defective merely becuase [sic] it is possible to be injured while using it. In the case of the Kem-Cure [sic] and its container, the law does not impose a duty to produce a product which is absolutely safe for the user under any and all conditions but merely requires that the products not be hazardous to normal use.

First, Bridges contends the instruction is proper only as to the negligence claim and is insufficient as to the strict liability claim. However, a recent decision of the Supreme Court of Louisiana has explained that strict liability and negligence concepts are substantially the same in Louisiana, except for the element of the defendant's knowledge of the risk involved. In *Kent v. Gulf States Utilities Co.,* 418 So.2d 493, 497 (La.1982), the court said:

In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, *that the owner knew or should have known of that risk,* and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm.

In a strict liability case against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. The claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage (or must prove, as some decisions have characterized this element of proof, that the thing was defective). The resulting liability is strict in the sense that the owner's duty to protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk, the factor which usually gives rise to a duty under negligence concepts....

Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of the thing's presenting an unreasonable risk of harm) is different in C.C. Art. 2317 strict liability cases and in ordinary negligence cases, the duty which arises is the same. The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends upon the particular facts and circumstances of each case.

(Emphasis in original).

Since the full instruction on strict liability did not restrict plaintiff's right to recover by requiring knowledge of the risk on the part of defendant, we find no error as to the strict liability claim in the light of the court's full instruction. It was an adequate statement of the law.

■ Bridges also objects to use of the term "hazardous to normal use," arguing that the proper phraseology should be "unreasonably dangerous to normal use." The jury charge, however, included the phrase "unreasonably dangerous" many times before and after this single isolated use of the phrase "hazardous." We find no prejudicial error in the single use of the word "hazardous." Furthermore, any error would be to the benefit of Bridges, since the challenged instruction would allow recovery for any "hazard," not just unreasonable ones.

■ Finally, Bridges objects to the wording of an interrogatory submitted to the

first jury. He asserts that the inclusion of the phrase "fail to warn" in the negligence interrogatory made warning an issue only in negligence, cancelling the inference of failure to warn as a defect under strict liability. We find no error. An inquiry by the jury during deliberations cleared up any possible ambiguity as to the words involved in the warning label under the strict liability interrogatory. The judge answered questions properly and with the approval of appellant's attorney.

## II. Sufficiency of Evidence

Bridges next challenges the sufficiency of the evidence to support the two jury verdicts. The relevant inquiry, according to *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc) is whether any substantial, credible evidence exists for the verdict. We find ample evidence to support the juries' findings in this case.

Both parties concede that Chemcure was a flammable liquid and was adequately labeled to warn of this danger. The parties further concede that under some circumstances Chem-cure, like many other flammable products, could explode. These circumstances, of course, fall far beyond the proper use of the substance. Yet a product can be unreasonably dangerous under Louisiana law for failure to warn even against unintended uses, if such uses are foreseeable. Louisiana Civil Code articles 2315 and 2317 look to the potential harm that can result through unintended uses. *Amco Underwriters of Audubon Ins. Co. v. American Radiator and Standard Corp.*, 329 So.2d 501, 504 (La.App.1976). Warnings are therefore also required regarding foreseeable, though unintended, consequences. *Cobb v. Insured Lloyds*, 387 So.2d 13, 19 (La.App.), *writ denied*, 394 So.2d 615 (La.1980); *Hoffoss v. Ralston-Purina Co.*, 341 So.2d 605, 606 (La.App.1977). The basic test is whether a reasonable seller would not sell the product if the risks involved were known or if the risks were greater than a reasonable buyer would expect. *Daniels v. Albach Co.*, 365 So.2d 898, 900 (La.App.1978). The true question in

this case is whether the combination of occurrences needed to cause an explosion constituted a foreseeable hazard that made the product unreasonably dangerous in the absence of a special warning on possible explosions. *Compare Weber v. Fidelity & Casualty Ins. Co.*, 259 La. 599, 250 So.2d 754, 756 (La.1971).

In this case, the combination of occurrences was unusual, making anticipation of the events by the manufacturer difficult. The drums were discarded without resealing, contrary to the manufacturer's instructions. If the drums had been sealed, an open fire could not have entered. Contrary to warnings, children were playing nearby. The contractors had known of prior trouble with neighborhood children, yet had taken insufficient action to prevent accidents. Finally, the evidence supports a conclusion that open flame in the form of a firecracker was introduced to the drum, contrary to warnings. Bridges knew the contents of the drum were burning when he approached it. Where three different circumstances, each the result of a practice against which the manufacturer cautioned, needed to occur in combination before an explosion took place, a jury could reasonably conclude that the manufacturer was not negligent in failing to foresee the hazard and to warn against the risk of explosion. Similarly, a jury could find the product not *unreasonably* dangerous or defective in the absence of such a warning. Even under strict liability, a manufacturer need not insure against all defects, but only against unreasonable dangers. *See Kent v. Gulf States Utilities Co., supra*, 418 So.2d 493, 498 (electrocution caused, *inter alia*, by road worker's misuse of unusually long thirty-foot pole which came in contact with uninsulated high tension lines did not suggest power lines were unreasonably dangerous).

## III. Partial Verdict

Bridges' final claim is that the first jury's inability to answer the interrogatory concerning defendant's alleged negligence resulted in an inconsistent verdict or indicates

jury confusion. The district court, it is urged, erred therefore in accepting any part of the jury's verdict.

The plaintiff brought suit claiming strict liability and, separately, defendant's negligence. Thus, the first jury was presented with special interrogatories dealing separately with the strict liability claim and the negligence claim. Although the jury could not reach a verdict on the negligence claim, it clearly did reach a verdict holding that there was no strict liability. The district court denied motions for judgment n.o.v. or new trial on the strict liability cause of action and rendered judgment for the defendant on this claim. The court ordered a new trial on the negligence cause of action. Trial was held, and the second jury gave a verdict for defendant on the negligence claim. The court then entered the final judgment for the defendant which is here under appeal.

 We point out that a jury's failure to reach a verdict on every interrogatory does not prevent a court from accepting the properly-answered interrogatories. *Duncan v. Barnes*, 592 F.2d 1336, 1338 (5th Cir.1979); *Skyway Aviation Corp. v. Minneapolis, Northfield & S. Ry.*, 326 F.2d 701, 704 (8th Cir.1964); *Black v. Riker-Maxson Corp.*, 401 F.Supp. 693, 696 (S.D.N.Y.1975). Properly-answered interrogatories may support a verdict on the issues to which they respond. This is true even if other claims in the case remain unsettled.

Bridges' two contentions are that an inconsistent verdict was created when the jury decided the strict liability claim for defendant but was unable to reach a verdict on the negligence claim, or that the verdict

reveals that the jury manifestly was confused, and thus the entire verdict of the first trial should be set aside.

It is the appellant's contention under the first claim that the verdict is inconsistent because it is impossible under Louisiana law to find for a defendant under a strict liability claim and yet be unable to reach a verdict on the negligence claim. The argument is that under Louisiana law the negligence claim in the case of a product or object which causes damage is nothing more than a strict liability claim with the additional requirement of defendant's knowledge of the unreasonably dangerous condition.[2] *Kent v. Gulf States Utilities, supra*, 418 So.2d at 497; *Chappuis v. Sears, Roebuck & Co.*, 358 So.2d 926, 929 (La.1978).

 But whether or not this is the law of Louisiana as defined in *Kent v. Gulf States Utilities*, quoted above at p. 178, the appellant is not in a position to claim an inconsistent verdict. If his contention is correct and there are no further differences between strict liability and negligence liability under Louisiana law, all he has established is that there should have been no retrial of the negligence issue but that judgment should have been awarded defendant on all claims under the strict liability verdict alone. It is the defendant who could raise a substantial issue under Louisiana law as to whether it could still be liable under a negligence claim after being exonerated under a strict liability claim. There was substantial evidence in the record to support the jury's verdict on the strict liability claim. Rightly or wrongly, appellant was given the opportunity to establish defendant's negligence by a preponderance of

---

**2.** Appellant also urges that Chemrex knew that its product could explode under combinations of vapor and flame. He, therefore, argues that Chemrex admittedly had "knowledge", and "knowledge" is the only additional element necessary under Louisiana law to prove negligence beyond the proof required to establish strict liability. In turn then, he argues that the jury clearly reached an inconsistent verdict or was confused when it found no strict liability but was unable to reach a verdict on the negligence issue when the only additional element required was admitted by Chemrex.

This argument distorts the nature of Chemrex's knowledge. The knowledge was no more than the simple knowledge which virtually everyone possesses that a highly flammable liquid can explode under certain combinations of vapor and flame. It was not an admission of knowledge of an "unreasonable risk of injury", *Kent v. Gulf States Utilities Co., supra*, 418 So.2d at 497. This contention, therefore, lacks persuasive force in appellant's attempt to establish an inconsistent verdict or jury confusion.

the evidence before a new jury, and it failed to do so. If there was inconsistency, it was to the detriment of the defendant, and not appellant Bridges.

▉ Bridges raises the additional point, however, that the first jury verdict indicated jury confusion and that the district court therefore erred in denying his request for a new trial on the issue of strict liability. When the jury sent out questions during its deliberations requesting clarification of the legal meanings of such terms as "flammable, combustible, and explosive," the judge properly met with counsel and discussed the proposed answers to the jury questions. The judge indicated that if the parties could not agree on answers, he would order a mistrial. Bridges, however, agreed to the answers which were given to the jury. Under these circumstances, we can find no error in the jury instructions.

▉ Finally, if there is general confusion, as possibly evidenced by the judge, the jury, and the parties, as to the precise scope of Louisiana law on strict liability for a dangerous product as compared to liability in negligence for a dangerous product, that confusion, as is pointed out above, was in this case to the disadvantage of the defendant, not the plaintiff. The jury was submitted a straightforward interrogatory on strict liability. Any possible confusion on that issue was cleared up by answers to jury questions to which appellant agreed. The difficult issues inherent in products liability cases can tax even the most willing and motivated of juries, and the fact that this jury requested clarification of difficult issues may well indicate clarity rather than confusion.

We find no reversible error. The juries properly performed their function of fact-finding, and the district judge's granting of partial judgment for defendant on the strict liability claim after the first trial was not erroneous.

AFFIRMED.